[No 33431.   Department Two.   June 20, 1957.]

SEARS, ROEBUCK AND COMPANY, *Appellant,* v. HARTFORD
ACCIDENT AND INDEMNITY COMPANY, *Respondent.*[1]

[1]Reported in 313 P. (2d) 347.

*Elliott, Lee, Carney & Thomas*, for appellant.
*George H. Bovingdon*, for respondent.

HILL, C. J.—Hartford Accident and Indemnity Company, hereinafter referred to as Hartford, is a Connecticut corporation, and, in the course of its business, issues public liability policies.

Sears, Roebuck and Co., a New York corporation, hereinafter referred to as Sears, operates a downtown retail store in Seattle, fronting on Utah street.

Sears maintains parking lots in the immediate area for the use of its customers, including a large lot immediately east of and across Utah street from its store building. Sur-

rounding this particular lot is a concrete sidewalk owned by the city. Sears has blacktopped this entire lot inside the sidewalks, including a two-foot strip of property adjacent thereto, which is also owned by the city.

Sears issues licenses to concessionaires to locate on this parking lot and sell their products. In 1945, such a license was issued to Cosmo B. Rockey, hereinafter referred to as Rockey, to locate and operate a refreshment stand at a specific place in the parking lot. As part of that license, Rockey was to

" . . . keep and maintain the space subject of the license and the adjoining and surrounding areas of said parking lot clean and free from debris, refuse and/or other extraneous material that may be occasioned by the operations of Second Party [Rockey] or the presence of patrons of Second Party in said area."

Furthermore,

" . . . Second Party shall hold harmless First Party [Sears] from any claim, action, loss, or damage that may arise by reason of Second Party's occupancy of said space or the operation of Second Party's business or the act or carelessness of patrons of Second Party in said area. And to that end, Second Party shall obtain and maintain in full force and effect policies of insurance in such amounts as First Party shall approve in writing. Second Party shall obtain particularly policies of insurance for public liability and food liability."

Rockey had insurance coverage with Hartford, and, for an added consideration furnished by him, Hartford issued a policy of liability insurance in which C. B. Rockey and/or Sears, Roebuck and Co. were named as the insured. The policy, written by Hartford and accepted by Sears, contains the following material provisions:

"Hartford Accident and Indemnity Company . . .

"Agrees with the Insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

"Insuring Agreements

"I.  Coverage A—Liability

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the premises for the purposes stated in the declarations, or operations necessary or incidental thereto. . . .

"II.  Defense, Settlement, Supplementary Payments

"As respects the insurance afforded by the other terms of this policy under coverage A the Company shall:

"(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, . . . but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; . . .

"IV.  Premises, Contract, Elevator, Products Hazard Defined

"(a) Premises.  The unqualified word 'premises' means (1) Designated Premises—the premises designated in the declarations; (2) Incidental Premises—premises not so designated, if used in connection with the designated premises as parking areas where no charge is made by the named Insured. . . .

"The word 'premises' includes the ways immediately adjoining."

This policy was renewed periodically and was in effect on June 16, 1952.

In May of 1947, Rockey, with Sears' knowledge, approval, and designation of a specific location, applied for and received permission from the city to make permanent water and sewage connections to the city water system.  Authority to have the permit issued was furnished by Mr. D. W. Wandell, then assistant manager of the downtown retail store; that authority coming through the same office that issued the license to Rockey in 1945.

Making connections to Rockey's stand necessitated tearing up the blacktop, located in the two-foot strip of city-owned property adjacent to and inside the cement sidewalk.  The evidence relating thereto was stricken, and the

trial court concluded that there was no more than a "likely hypothesis" that improper backfilling of the excavation resulted in a small hole or dip in the blacktop above the point where the water connection was made. In any event, on June 16, 1952, Mrs. Helen M. Bench, while carrying a large mirror from Sears' downtown retail store, entered the parking area, tripped and fell in proximity to that small hole or dip, and sustained serious injuries. Rockey assisted her after the fall.

Mrs. Bench filed a claim against the city on July 14, 1952. The claim being rejected, she brought an action against the city and Sears, serving the latter with summons and complaint October 2, 1952. These papers were forwarded to the Pacific Coast Division office of Sears in Los Angeles, and, through its counsel there, were transmitted to counsel in Seattle, coming into the hands of the latter on October 11, 1952.

A demurrer and motions to the complaint were interposed, and counsel conducted an investigation including pretrial discovery proceedings. Negotiations for a settlement were also carried on with Mrs. Bench's attorney.

Sears is generally a self-insurer and, consequently, its counsel made no effort to explore the possibility of insurance coverage. As the investigation progressed, it developed that the hole that was probably caused by the installation of sewer and water connections to Rockey's stand might have occasioned Mrs. Bench's fall, and this led to the file in Mr. Wandell's office, which contained a copy of Rockey's license and a reference to the insurance policy issued by Hartford, which was in the Pacific Coast Division office of Sears.

Immediately after the policy came to his attention, Sears' counsel went to Hartford's Seattle Claims attorney, Mr. Wendell Bonesteel, and explained that he had information concerning the possibility of coverage by Hartford. The notice to Hartford was given to Mr. Bonesteel immediately preceding the Thanksgiving holiday, which fell on November 26, 1953. The trial was scheduled to begin on December 1, 1953.

The trial court found, on conflicting testimony, that no formal tender of defense was made to Hartford, and that if a tender was made, it was not accepted. Mr. Bonesteel made no objection to Sears' counsel continuing with the defense of the suit and with negotiations for settlement. He immediately proceeded to inform his superiors by mail of the pending action.

The cause came on for trial on December 1, 1953, against Sears and the city of Seattle. The action against the city was dismissed December 2, and December 3, Sears settled with Mrs. Bench for seven thousand dollars.

This action was brought as a result of Hartford's refusal to reimburse Sears in the amount of $7,946.09 for the payment to Mrs. Bench, together with expenses incurred in the defense of her suit.

Sears appeals from a judgment in favor of the defendant, Hartford.

It is Sears' contention that it is covered by the liability policy for the injury to Mrs. Bench; that notice of accident and pending suit was given to the insurer, Hartford, immediately upon Sears' becoming aware of the coverage; and that there was no prejudicial delay in notice which would excuse the insurer from liability.

At the outset, there is a question whether or not the policy covers the injury to Mrs. Bench when, concededly, she was not on the premises for purposes benefiting Rockey, or in any way connected with his business. Hartford would have us read the policy in light of the Rockey-Sears' license.

Hartford, by the terms of its contract of insurance, became obligated to pay damages because of bodily injury sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the premises for the purposes stated in the declarations, or operations necessary or incidental thereto. The declaration in the policy states that the premises are to be used for the purposes of a refreshment stand: " 'premises' includes the ways immediately adjoining," and "premises not . . . designated, if used in connection with the designated prem-

ises as parking areas where no charge is made by the named Insured."

Hartford prepared the contract, and this is not an action to reform it. For a specific consideration, Hartford added Sears as a party insured. At that time, it could have defined and limited the coverage it intended to give to Sears, but did not do so.

■ That Sears received a greater coverage than Rockey was obligated to furnish, and than Hartford intended to give, is not a matter with which we are here concerned. Since an insurance policy is merely a written contract between an insurer and the insured, courts cannot rule out of the contract any language which the parties thereto have put into it; cannot revise the contract under the theory of construing it; and neither abstract justice nor any rule of construction can create a contract for the parties which they did not make for themselves. *Jeffries v. General Cas. Co.* (1955), 46 Wn. (2d) 543, 283 P. (2d) 128; *Evans v. Metropolitan Life Ins. Co.* (1946), 26 Wn. (2d) 594, 174 P. (2d) 961.

We have but recently, in a case involving much greater hardship on the insurance company, and under circumstances where the evidence dehors the policy clearly demonstrated a specific intention not to cover the risk in question, held that the insurance company was bound by terms of the policy it had issued. *National Indemnity Co. v. Smith-Gandy, Inc.* (1957), *ante* p. 124, 309 P. (2d) 742. See, also, Laws of 1947, chapter 79, § .18.19, p. 366 [*cf.* RCW 48.18.190].

We come now to the question of whether Sears gave timely notice to Hartford and complied with the requirement to immediately forward to the company the summons or other process received by it.

Sears admits that the policy of insurance was in the hands of its Pacific Coast Division office and that the files in Mr. Wandell's office indicated the coverage; yet, it is now its contention that it should be excused from the requirements of the notice clauses in the policy, because it was not aware of the coverage until investigation by its

Seattle counsel led to Mr. Wandell's office and the ultimate discovery of the insurance policy in late November, 1953.

The pertinent portions of the notice clauses read:

"2. Notice of Accident. . . . written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents *as soon as practicable*. . . .

"3. Notice of Claim or Suit. Coverage A. If claim is made or suit is brought against the Insured, the Insured shall *immediately* forward to the Company every demand, notice, summons or other process received by him or his representative. . . .

"6. Action Against Company. Coverage A. No action shall lie against the Company unless, as a *condition precedent thereto*, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company." (Italics ours.)

■ "As soon as practicable" means as soon as can reasonably be expected under the circumstances. *Vanderbilt v. Indemnity Ins. Co.* (1943), 265 App. Div. 495, 39 N. Y. S. (2d) 808; *Baker v. Metropolitan Cas. Ins. Co.* (1934), 118 Conn. 147, 171 Atl. 7; *Dworkin v. Aetna Cas. & Surety Co.* (1949), 194 Misc. 501, 87 N. Y. S. (2d) 77.

We have said in *Foley v. New World Life Ins. Co.* (1936), 185 Wash. 89, 94, 52 P. (2d) 1264, 105 A. L. R. 473, that "immediately" means "within a reasonable time."

"Immediately" would seem to be more peremptory than "as soon as practicable." A person may not know that an accident has happened, and may also have doubt as to whether there has been any damage in consequence of an accident, but he is not in doubt, and under no illusions, when he is served with a summons and complaint. The cases refer to many matters which might excuse or justify a delay in giving notice of the happening of an accident, but there seems little justification or excuse for failure of an insured to immediately forward to the insurance company "every demand, notice, summons or other process received by him."

This distinction is probably what Hartford had in mind

when, in preparing its policy, it required notice of the accident "as soon as practicable" and required that "every demand, notice, summons or other process" be forwarded to it "immediately."

The distinction, however, is not so much in the words used as in the thing that is required to be done. We would accept the same definition for "immediately" as is given for "as soon as practicable," if it were used in connection with the requirement of notice of accident.

The present case affords an excellent illustration of the distinction between giving notice of the accident and forwarding process or suit papers. Mrs. Bench was injured June 16, 1952. Sears' failure to report the accident prior to October 2, 1952, the date it was served with summons and complaint (although Mrs. Bench received treatment from a nurse on duty at the store immediately following her fall), was excusable because the trial court found that Sears had no knowledge that Mrs. Bench would assert a claim until that date; but, under all the authorities, its failure for almost fourteen months (late November, 1953) to forward the summons and complaint to Hartford cannot be excused on the ground that it didn't know it had liability insurance covering such an occurrence. See Annotation on "Liability insurance: clause with respect to notice of accident or claim, etc., or with respect to forwarding suit papers." 18 A. L. R. (2d) 443, 452, and other annotations on same subject matter. 123 A. L. R. 950, 981; 76 A. L. R. 23, 182.

The purpose of the provision as to notice of suit is to allow the insurer to make an investigation of the accident in order to prepare a defense, and to afford the insurer an opportunity to control the litigation. See *Aetna Life Ins. Co. v. Walley* (1935), 174 Miss. 365, 376, 164 So. 16, where the court said:

"The notice was not given in time to enable the appellant to investigate the merits of Mrs. Wren's claim to determine whether or not it should be paid, and, if not, to prepare its defenses thereto. Had it participated in the trial of the case, it would have had to accept it as made by the insured,

and this was exactly what the requirements of the policy were intended to prevent it from having to do."

Had Hartford taken over the defense of the present action a week before it was set for trial, it would have had "to accept it as made by the insured," and that was "what the requirements of the policy were intended to prevent it from having to do."

■   These provisions as to notice of accident and of suit are reasonable and valid, and must be substantially complied with under penalty of releasing the insurer from liability to the insured. *Weller v. Atlantic Cas. Ins. Co.* (1942), 128 N. J. L. 414, 26 A. (2d) 503; *Distributors Packing Co. v. Pacific Indemnity Co.* (1937), 21 Cal. App. (2d) 505, 70 P. (2d) 253; *Home Life & Accident Co. v. Beckner* (1925), 168 Ark. 283, 270 S. W. 529; *Aetna Life Ins. Co. v. Walley, supra; Dworkin v. Aetna Cas. & Surety Co., supra.*

■   A delay of notice for over thirteen months after the original complaint and summons were served, when there was knowledge of coverage by agents of the insured, is an unreasonable delay and does not substantially comply with the terms of the insurance contract.

We have but recently considered the effect of the "inexplicable" failure of a large corporation to timely produce certain documents which were at all times in the possession of its employees. *Bowker v. McDonald* (1957), 49 Wn. (2d) 633, 305 P. (2d) 800.

The failure of the insured to locate the insurance policy is more "explicable" in this case, because it probably came as quite a surprise to Sears to discover that it had coverage against a claim such as that of Mrs. Bench; but if not "inexplicable" it is totally inexcusable. The fact that corporations are so large that the right hand doesn't know what the left hand is doing, or, perhaps more accurately to say, that the corporate mind has no knowledge that the left hand is clutching an insurance policy, does not entitle it to special consideration when it comes into court, seeking to take advantage of the policy but ignoring the conditions precedent to an action thereon.

But Sears urges that Hartford was not prejudiced by its

failure to give a timely notice of Mrs. Bench's injury and of her suit.

■ The trial judge in his oral opinion states the reasons why the delay must be regarded as prejudicial to Hartford:

"The problem is that this notice provision is in the policy not for the protection of the assured, but for the protection of the company. The insurance company, which has a right to investigate the case in its own way, has a right to be notified so that it can investigate before all the evidence is washed away by the rain, or before the weather changes and the shrubbery changes and the witnesses disappear and the defects are repaired.

"The company has the right to evaluate the case; the company has the right to determine whether they are going to pay or not; and the mere fact that, if they had been handling it, they might have reached the very same result that was reached, is really no defense."

■ Sears argues that there was no prejudice because Hartford agreed that any settlement made by Sears' counsel would be uncontested by Hartford. Appellant relies on Mr. Bonesteel's statement (relating the conference at time of notice to Hartford) that:

"He just told me everything and put us on notice, and then we discussed the possibility of settlement and his ideas of settlement value were so considerably less than what it was eventually settled, but I said I would take notice of everything that was going on, but I wouldn't question his judgment—if he should later sue us—I mean, it wouldn't be necessary for them to go ahead and try the case to determine the amount; if, in his judgment, it should be settled at any figure, I wouldn't question his judgment on the settlement value."

We think that this was no more than an agreement that Hartford, if liable, would not question the amount of its liability, but we find no agreement not to question the fact of liability, based on the issue of coverage, failure to give timely notice of accident, or failure to give timely notice of the suit.

The result we reach, in no way imputes any fault to counsel for Sears for their handling of the Bench claim and suit.

Indeed, it is entirely possible that if it had not been for the diligence of its counsel, Sears never would have discovered that it had any liability insurance covering this situation. The fact remains that Hartford had reserved to itself the right to have the case investigated, prepared, and presented by counsel of its own choosing. To be deprived of that right constitutes prejudice, however imponderable the damages, and however efficient and competent the attorneys retained by the insured.

We have considered the issue of prejudice to Hartford only because that issue was considered by the trial court and argued in the briefs. Our view is that in this case it was entirely immaterial whether Hartford was prejudiced or not. The cases recognize a distinction between policies in which notice to the insurer of the accident, and notice to the insurer of any claim or suit, are made a condition precedent to any suit against the company, and those policies in which there is no express provision making the insured's failure to give such notice a ground of forfeiture or a condition precedent. It is in these latter cases that the question of whether the insured is prejudiced by the failure to give notice of the accident or of suit is considered.

The rule established by the great weight of authority is that where, as in the present case, notice of the accident and forwarding of any "demand, notice, summons or other process" are specifically made a condition precedent to any action against the insurer by the contract of insurance, the failure to give a reasonably timely notice of the accident or of the receipt of any "demand, notice, summons or other process" will release the insurer from the obligations imposed by the contract, although no prejudice may have resulted. *State Farm Mut. Automobile Ins. Co. v. Cassinelli* (1950), 67 Nev. 227, 216 P. (2d) 606, 18 A. L. R. (2d) 431; *Houran v. Preferred Accident Ins. Co.* (1938), 109 Vt. 258, 195 Atl. 253.

Both of these cases, as does our own case of *Shafer v. United States Cas. Co.* (1916), 90 Wash. 687, 691, 156 Pac. 861, make clear the distinction we have indicated. The rule, substantially as we have stated it, together with sup-

porting cases, will be found in the following A. L. R. Annotation on "Liability insurance: clause with respect to notice of accident or claim, etc., or with respect to forwarding suit papers." 18 A. L. R. (2d) 443, 452, and other annotations on same subject matter. 123 A. L. R. 950, 981; 76 A. L. R. 23, 182. See, also, Comments, 51 Mich. L. Rev. 275. Other Washington cases recognizing the rule directly are: *Merriman v. Maryland Cas. Co.* (1928), 147 Wash. 579, 266 Pac. 682, 63 A. L. R. 1040; *Deer Trail Consolidated Mining Co. v. Maryland Cas. Co.* (1904), 36 Wash. 46, 78 Pac. 135.

In *Shirley v. American Automobile Ins. Co.* (1931), 163 Wash. 136, 300 Pac. 155, which was an action by injured parties against an insurance company, we held that an insured was not prejudiced by the failure to forward to the insurer the process served upon him at the time of the commencement of action. In that case, we pointed out that there was no forfeiture of rights under the policy by reason of such failure, and it appears from the quoted language of the policy that the forwarding of such process was not a condition precedent to the maintenance of the action. In that case, although a notice was given of the accident, no notice was given of the suit and a default judgment was taken against the insured. Such a judgment was held to be not binding on the insurer, but the injured parties in their action against the insurance company had to establish the liability of the insured, and with the exception of one plaintiff, they failed in their effort so to do because of their own contributory negligence. The policy involved places the *Shirley* case in the classification where notice is not a condition precedent, and the fact of prejudice can become an issue. It is clearly distinguishable on that basis from the present case.

The judgment of the trial court is affirmed.

SCHWELLENBACH, DONWORTH, ROSELLINI, and FOSTER, JJ., concur.