**TWIN CITY FIRE INSURANCE CO., Plaintiff,**

v.

**KING COUNTY, WASHINGTON, Defendant.**

**No. C90–684R.**

United States District Court, W.D. Washington, at Seattle.

Sept. 20, 1990.

Robert J. Bocko, Bradbury, Bliss & Riordan, Seattle, Wash., for plaintiff.

William Jones Price, Robert Gostin Mitchell, Karr Tuttle Campbell, Seattle, Wash., for defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COVERAGE AND STRIKING MOTION FOR BIFURCATION**

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiff's and defendant's cross-motions for summary judgment. Having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. BACKGROUND

Plaintiff Twin City Fire Insurance Company ("Twin City") initiated a declaratory action for determination of coverage on an insurance policy it issued to defendant King County. Twin City has now moved for summary judgment on the question of coverage. King County also moves for partial summary judgment on the coverage question, conditioned on the County's proof that it has reached the self-insured retention limit set forth in the policy.

Twin City issued a policy for excess general liability coverage to King County for the period of April 1, 1983 to April 1, 1984. The policy insures King County for liability and defense expenses arising from suits against the County, including liability associated with claims of personal injury alleged to have arisen from discriminatory treatment of County employees.

This policy is not a typical general liability policy. Twin City's obligation is limited to $14,700,000.00 per covered occurrence. King County must pay a "self insured retention" ("SIR") of $300,000.00 towards defense and settlement of each claim. The self insurance is limited to an annual aggregate of $1 million for all covered occurrences. Once the County's costs of defending and settling cases totals $1 million during the policy's coverage period, Twin City is obligated to pay King County all sums for which the County is found liable as a result of adjudication or settlement.

On November 26, 1986, Rick Azpitarte sued the County, alleging that the County had unlawfully discriminated against him in 1983–4 by breaching its duty to accommodate his physical handicap. Azpitarte also alleged national origin discrimination and unlawful retaliation stemming from grievances filed by Azpitarte against the County.

Three years later the case was tried and the jury returned a verdict for Azpitarte on November 3, 1989, awarding $275,000.00 in damages. The court further awarded $150,546.47 in attorney's fees and costs, and entered judgment of $425,546.47 on December 8, 1989. Immediately before trial, Azpitarte had offered to settle the case for $125,000.00 but King County refused. The County's highest settlement offer was $50,000.00.

On February 26, 1990, four months after the trial, after an appeal had been filed and one day before a court-arranged settlement conference, King County notified Twin City for the first time of the suit and its pending appeal. King County also simultaneously notified Twin City that it intended to settle the case prior to appeal. The case settled on March 14, 1990 for $402,000.00. The County believed it had reached its $1 million "self-insured retention" ("SIR") limit, and submitted a claim to Twin City for the costs associated with defense and settlement of the Azpitarte litigation.

Twin City refused to indemnify King County for those expenses, asserting that (1) the County has not yet incurred liability sufficient to satisfy the $1 million SIR required by the policy, and (2) that King County breached the terms of the policy by failing to notify Twin City of the suit until 1990. Twin City also argues that part of the awarded damages went to the claim of retaliation, which is a 1984 occurrence falling outside the covered period of the policy. Finally, the insurer claims that the discriminatory actions taken by the County were not covered by the policy because they were done by "executive officers" who are expressly excluded from the policy.

Both Twin City and the County now seek a summary judgment determination on the existence of coverage under the policy. The County's motion is conditioned on provision of proof that the $1 million SIR requirement has been met.[1]

## II. DISCUSSION

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the

---

1. The County admits that it has already collected $150,000 in reimbursement for Azpitarte defense costs from a different insurance company with which the County had a policy for occurrences between 1984 and 1985. The County agreed that any award from Twin City would be offset by this amount from the other insurer.

opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.,* 809 F.2d 626, 630–31 (9th Cir.1987); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir. 1985).

### A. Policy Requirements

■ In addition to the limitations placed on Twin City's reimbursement amounts and the SIR limit, the policy also has specific provisions about notification of claims. Section 5 states as follows:

> NOTICE OF OCCURRENCE. Whenever the authorized representatives of King County have information from which King County may reasonably conclude that an occurrence covered hereunder involved injuries or damages which, in the event that King County should be held liable, *is likely to involve this policy, notice shall be sent to Twin City as soon as practicable....* (emphasis added)

Section 6 states:

> ASSISTANCE AND COOPERATION. Twin City shall not be called upon to assume charge of the settlement and defense of any claim made or suit brought or proceeding instituted against King County but Twin City shall have the right and shall be given the opportunity to associate with King County in the defense and control of any claim, suit or proceeding relative to an occurrence *where the claim or suit involves, or appears reasonably likely to involve Twin City,* in which event King County and Twin City shall cooperate in all things in the defense of such claim, suit or proceeding.

Policy No. TXX111010 at 14–15 (emphasis added).

The policy defines "occurrence" to mean:

> ... An accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally result in personal injury ...

*Id.* at 12.

The definition of "personal injury" includes:

> ... (4) unlawful discrimination not committed by or at the direction of any executive officer of the Named Insured, but only with respect to the liability other than fines and penalties imposed by law; ...

*Id.* at 11.

### B. Notification

As outlined above, the policy states that the County was required to give Twin City written notice "as soon as practicable" of any occurrence "likely to involve the policy." Policy at 15. Further, King County must also permit Twin City to participate in defense of claims if a claim "appears reasonably likely to involve" the insurer. Policy at 16.

The court finds that King County did have a duty to notify Twin City about the Azpitarte claim at the time it first arose. King County's explanation for the fact that it did not notify Twin City about the Azpitarte claim until February 26, 1990, is because until that time, the County did not believe, or was led by Twin City to not believe, that it had reached the $1 million SIR limit. The County states it did not believe Azpitarte would prevail at trial and also evaluated his claims as worth no more than the $50,000.00 offered at settlement. Based on this low assessment of the case, the County states it did not believe that the claim would be likely to trigger the policy. Therefore, it did not believe it owed any duty under the policy to notify Twin City any earlier than it did.

The court must evaluate the County's view of whether or not its policy from Twin City would likely be involved with the Azpitarte claim. To do this, the court looks at what information the County had available to it, and what it reasonably should have done in light of that information.

There are three strong factors persuading the court that the County should have notified its insurer on the contested claim. First, there is the letter sent on behalf of the County from William Price to Twin City, dated July 5, 1989, stating that the

County believed that it had, in fact, reached the SIR limit as of that date.

Second, in keeping with that belief, the County notified Twin City of at least six other claims during the same time period. Based on this clear evidence that the County believed it had reached the SIR limit, it was the County's obligation to notify Twin City about the Azpitarte claim and any other claim, since from the County's own evaluation, Twin City's policy would likely be involved from that point forward.

The County presents a significant amount of evidence to show that Twin City led the County to believe that Twin City did *not* think the County had reached the SIR limit. For example, King County cites to twelve different notifications it received from Twin City between August 21, 1989 and June 26, 1990, that flatly rejected any involvement with those other claims because Twin City did not believe, or "was unable to verify," that King County had reached its SIR limit. In at least one of those notifications, Twin City recommended that "King County should proceed with (resolving a certain claim) to protect its interests and should act in good faith to protect the interests of Twin City as an excess liability insurer by resolving the case as economically as possibly." Price Declaration, Exh. G. The County points to Twin City's consistent position of denying involvement with those claims as justification for its own omission of notification about the Azpitarte claim.

However, just because the County thought the insurer would dispute its claims does not remove the County's obligation of notification. Further, with all the other claims that the County had tendered in those same months, it seems very likely that the cumulative amount of liability was growing quickly. This should necessarily have alerted the County that the SIR limit may be approaching, and that therefore any claims at that time would be likely to involve the policy.

The third factor goes to the limitations on liability outlined within the policy. King County was obligated to pay up to $300,-000.00 per occurrence, up to the annual

aggregate SIR of $1 million. Even if the County had questionable grounds for not notifying Twin City of the Azpitarte suit before the trial, after the trial was completed and the judgment of $425,000.00 was awarded, the County should have immediately notified Twin City, since the insurer would have been potentially exposed to the excess liability above the County's share of $300,000.00 per occurrence. Yet the County waited even several months more to notify Twin City.

Despite Twin City's past history of responses to other County claims, the insurer should have been given the option of deciding whether it wanted to be involved with the defense in the Azpitarte suit, or wanted to take other actions such as insisting on special interrogatories at trial for apportionment of damages. Irregardless of the likelihood that Twin City would have declined to acknowledge liability, the County may not now rely on its assumptions or predictions about Twin City's behavior as a means to avoid its legal obligations of notification.

## C. Prejudice

■ To be relieved of any duty to indemnify which might otherwise exist under an insurance policy because of breach of the notice, assistance and cooperation clauses, the insurer must show both the breach and prejudice resulting from it. *Oregon Automobile Ins. Co. v. Salzberg*, 85 Wash.2d 372, 376, 535 P.2d 816 (1975). The burden of proving prejudice rests with the insurer. *Id.* at 377, 535 P.2d 816.

The issue of prejudice resulting from an insured's breach of a policy is generally one of fact. *Salzberg, supra* at 377, 535 P.2d 816. However, prejudice may be presumed as a matter of law in cases where the breach is extreme. *Sears, Roebuck & Co. v. Hartford Accident & Indemnity Co.*, 50 Wash.2d 443, 313 P.2d 347 (1957).

■ Twin City argues that this situation is one where the breach is extreme enough for prejudice to be presumed. Twin City cites *Sears, supra,* where the insured failed to notify the insurer of a claim for 13

months and did so only one week before trial even though it knew it had insurance. The court stated, in *dicta*, that the insurer's failure to notify the insured of the claim until one week before trial constituted prejudice because the insured deprived the insurer of its contractual right to investigate, prepare and present a defense by counsel of its own choosing. *See also, Felice v. St. Paul Fire & Marine Ins. Co.,* 42 Wash.App. 352, 711 P.2d 1066 (1985) (prejudice presumed where insured delayed notification of claim until after unfavorable trial and after appeal period had almost concluded).

The court finds that prejudice to Twin City is presumed in this case. Twin City was not informed of the Azpitarte claim until after the first settlement was rejected, the case was lost, the judgment was awarded and an appeal was filed, and one day before the court arranged a settlement conference. This certainly does not qualify as "notification as soon as practicable," and excuses Twin City from its obligations under the policy.

In denying that Twin City was prejudiced, King County argues that it doubts Twin City would have participated in the case in the first place, and that the County saved Twin City over $20,000.00 in the settlement process which was beneficial rather than prejudicial. This argument misses the point. King County's breach of its notification obligation deprived Twin City of its contractual right to participate in the case, if it chose, to protect its interests. As the court said in *Transamerica Insurance Group v. Chubb & Son, Inc.,* 16 Wash. App. 247, 252, 554 P.2d 1080 (1976), "The course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken." Neither the court nor the County can know what course Twin City might have chosen if it had been notified of the Azpitarte claim months, if not years, earlier. For that reason, prejudice to the insurer is found in this situation.[2]

**2.** Based on the finding of the County's breach and prejudice to the insurer, the court need not address whether or not the Azpitarte claim was

Finding that the County breached its duty to notify the insured, and finding that the insurer was prejudiced by the breach, the court concludes that no coverage exists for the County's claim.

NOW, THEREFORE, it is ordered that (1) plaintiff's motion for summary judgment is GRANTED; (2) defendant's cross-motion for partial summary judgment is DENIED; (3) plaintiff's motion for reconsideration of order striking reply brief is STRICKEN as moot; and (4) plaintiff's pending motion for bifurcation and stay of counterclaims is STRICKEN as moot.

excluded from coverage based on the charge that "executive officers" participated in Azpitarte's alleged discrimination.