**S.B. CORPORATION, a Nevada Corporation dba Cuso Leasing, Plaintiff,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut Corporation; and Does I through V, Defendants.**

**No. CV–S–94–187–PMP (RJJ).**

United States District Court, D. Nevada.

March 24, 1995.

**752**

Constance L. Akridge, Las Vegas, NV, for plaintiff.

Kwasi Nyamekye, Las Vegas, NV, for defendants.

*ORDER*

PRO, District Judge.

Before the Court is Plaintiff S.B. Corporation's Motion for Partial Summary Judgment (# 30) filed along with Plaintiff's Concise Statement of Undisputed Facts (# 31) on December 30, 1994. Defendant Hartford Accident and Indemnity Company filed an Opposition and Countermotion for Summary Judgment (# 32) on January 17, 1995. On February 10, 1995, Plaintiff filed a Supplement to its Concise Statement of Undisputed Facts (# 33) along with a Reply to Defendant's Opposition to Motion for Partial Summary Judgment and Plaintiff's Opposition to Defendant's Countermotion for Summary Judgment (# 34). Defendant filed a Reply (# 37) on March 2, 1995.

## I. *Factual Background*

According to the undisputed facts as presented by Plaintiff and, for the most part, unchallenged by Defendant, Plaintiff S.B. Corporation ("Cuso") entered into a Master Lease Agreement with Network Federal Credit Union ("Network") in which Cuso agreed to lease automobiles from Network and then sublease the automobiles back to Network members. On April 18, 1991, Defendant Hartford Accident and Indemnity Company ("Hartford") issued a comprehensive business liability coverage policy ("the Policy") to Cuso which, among other things, provides coverage for personal injury, property damage, and advertising injury. Thereafter, on May 31, 1991, Network terminated Cuso's rights under the Master Lease Agreement prompting Cuso to file a declaratory relief action against Network in Nevada state court. On June 21, 1991, Network filed its Answer and Counterclaims against Cuso.[1]

On March 4, 1992, Cuso's insurance agent filed a claim with Hartford to provide a

---

**1.** Network's counterclaims against Cuso in the state court action were for 1) breach of contract, 2) breach of fiduciary duty, 3) accounting, 4) injunctive relief, and 5) appointment of receiver.

defense and indemnify Cuso against Network's claims. On March 9, 1992, Cuso and Hartford executed a "Non–Waiver Agreement" whereby Cuso and Hartford agreed to reserve all the rights of each party under the terms and conditions of the Policy while investigation of the loss proceeded. By letter dated April 27, 1992, Hartford informed Cuso that it would neither defend nor indemnify Cuso because it was Hartford's position that Network's claims against Cuso were not covered under the terms of the Policy.

Cuso alleges that after Hartford was asked to reevaluate its coverage decision, Hartford retained Niels Pearson, Esq. to render a coverage opinion. Mr. Pearson allegedly informed Hartford that it would potentially be forced to indemnify Cuso based upon Network's slander of title allegations which were covered under the personal injury and advertising injury provisions of the Policy. Despite this opinion, however, Hartford continued to deny coverage. To date, Cuso has incurred $579,323.04 in legal fees and costs associated with the Network litigation.

## II. *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 699, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

## III. *Discussion*

▉ As an initial matter, because federal jurisdiction in this action is invoked upon diversity of citizenship, this Court is bound to apply the substantive law of the State of Nevada. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Strassberg v. New England Mutual Life Ins. Co.*, 575 F.2d 1262 (9th Cir.1978). In the absence of controlling Nevada law, however, this Court must use its own best judgment in predicting how the Nevada Supreme Court would decide the substantive issue. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), *modified*, 810 F.2d 1517 (1987); *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir.1980). In performing that function, this Court may be aided by reviewing well-reasoned decisions from other jurisdictions. *Takahashi*, 625 F.2d at 316.

Cuso argues that summary judgment in its favor is appropriate because the allegations of property damage and slander of title in Network's counterclaim triggered Hartford's duty to defend. In response, Hartford denies that coverage exists for Network's counterclaims under the Policy, and, in any event, coverage is precluded by Cuso's failure to promptly notify Hartford of the Network suit. This alleged failure to promptly notify forms the basis of Hartford's Countermotion for Summary Judgment. Because the Court finds that the issue regarding the absence prompt notification must be decided before reaching the issue of whether Network's claims are indeed covered by the Policy, the Court's analysis will begin by considering Hartford's Countermotion for Summary Judgment (# 32).

### A. Hartford's Countermotion for Summary Judgment (# 32)

Section II of the Policy, entitled "COMPREHENSIVE BUSINESS LIABILITY COVERAGES," covers Cuso in the event it becomes liable for damages because of bodily injury, property damage, personal injury, or advertising injury." *See* Policy No. 53 SBA KX3031, attached as Exhibit "C" to Hartford's Opposition to Motion for Summary Judgment and Countermotion for Summary Judgment (# 32), at p. 7 of 19. The Policy further provides that Hartford "shall have the right and duty to defend any claim or suit against the insured seeking damages payable under this policy, even though the allegations of the suit may be groundless, false or fraudulent." *Id.* at 8 of 19.

Cuso argues that the combination of these two sections required Hartford to defend Cuso in the Network action. Hartford counters that it is not obligated to defend or indemnify Cuso because Cuso failed to comply with the Policy's notice requirements.

Under the heading "CONDITIONS APPLICABLE TO SECTION II," the policy states as follows with regard to notice:

**Insured's Duties in the Event of Occurrence, Claim or Suit**

a. In the event of an occurrence, the insured shall give to the Company or its authorized agents, as soon as practicable, written notice containing:

(1) particulars sufficient to identify the insured;

(2) reasonably obtainable information with respect to the time, place and circumstances; and

(3) names and addresses of the injured and of available witnesses.

b. If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

*See* Policy No. 53 SBA KX3031, *supra*, at p. 17 of 19.

In addition to specifying that timely notice and immediate forwarding of suit papers are conditions of coverage, the Policy further states the following with regard to an insured's right to sue:

No suit shall be brought on this policy unless the insured has complied with all the policy provisions and has commenced the suit within one year after the loss occurs.

*Id.* at 15 of 19.

In *State Farm Mutual Automobile Ins. Co. v. Cassinelli,* 67 Nev. 227, 216 P.2d 606 (1950), the Nevada Supreme Court considered the question of whether the insured in that case was precluded from recovery by reason of his failure to give the notices required by the policy. The insured in *Cassinelli* waited four months before forwarding copies of the summons and amended complaint to his insurer and, as a result, the insurer denied coverage citing the notice provision of the policy. In *Cassinelli,* the policy stated,

Upon the occurrence of an accident written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon a practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

*Cassinelli,* 216 P.2d at 609. The policy provisions requiring notice at issue in *Cassinelli* contained language that is strikingly similar, if not virtually identical, to the language of the Policy in the case at bar.

With regard to an insured's right to sue, the policy in *Cassinelli* further provided that "[n]o action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy." *Id.* Again, the Policy

in the instant case contains a similar provision.

The Nevada Supreme Court began its analysis by establishing that "the effect of the failure to give notice and forward suit papers depends upon the wording of the policy." *Id.* The Court next analyzed a number of cases from other jurisdictions and found it appropriate to distinguish between those "cases involving those policies that definitely provide that the requirements for notice are conditions precedent, and that no action shall lie against the company without compliance," and those cases that found the notice requirement to be merely a condition subsequent, with which a failure to comply would not defeat recovery in the absence of prejudice. *Id.* at 610. The court went on to hold as follows:

By reason of the overwhelming weight of authority of the courts of last resort within the United States, we are compelled to hold that on account of the respondents failure to perform the condition precedent, stipulated in the policy as such, of giving notice of the suit and forwarding summons and complaint within reasonable time, no action on his part lay against the company. Lack of prejudice, under the terms of the policy, was immaterial.

*Id.* at 616.[2]

Like the provision in *Cassinelli,* the Court finds that the notice provision of the Policy in the case at bar is a condition precedent to recovery. The language is clear that timely notice and immediate forwarding of suit papers are conditions with which Cuso must comply to render Hartford liable under the policy. This conclusion is reinforced by the fact the policy is clear that no suit may be brought against Hartford unless Cuso has complied with all the policy provisions; this undoubtedly includes the notice provisions at issue. Moreover, it is of no moment that the words "condition precedent" do not appear in the Policy as Nevada law does not require the presence of such language where it is amply clear that timely notice is a condition of coverage. *See Las Vegas Star Taxi, Inc.*

---

2. The court interpreted the word "immediately" in the policy "not to mean without lapse of any time whatsoever, but within a reasonable time under the circumstances." 216 P.2d at 615.

*v. St. Paul Fire & Marine Ins. Co.*, 102 Nev. 11, 714 P.2d 562 (1986).

Having found that notice is a condition precedent to coverage, the issue turns to whether Cuso adequately complied with the notice provision. Cuso filed suit against Network on June 11, 1991, in Nevada state court. On June 21, 1991, Network filed its Answer and Counterclaims against Cuso. It was not until March 4, 1992, nearly eight months after Network filed its answer and counterclaims, that Cuso notified Hartford of the action and forwarded copies of the suit papers. While not absolutely determinative, in *Cassinelli* the insured's delay of almost four months in giving notice to the insurance company that the insured had been sued, and in sending the insurance company copies of the summons, complaint, etc., was found to be unreasonable and, therefore, not in compliance with the requirement that this be done immediately. 216 P.2d at 615. *See also Star Taxi*, 714 P.2d at 563–64 (delay until ten days before trial was improper under immediate notice provision of insurance policy). Likewise, the Court finds that Cuso's unjustified delay of nearly eight months in sending Hartford copies of Networks' answer and counterclaims was unreasonable and, therefore, fails to comply with the notice requirements of the Policy.

Cuso makes two arguments in an attempt to excuse its delay in forwarding the suit papers to Hartford: 1) that Hartford must show that it was prejudiced by the delay because the Nevada Supreme Court in *Star Taxi* implicitly overruled its holding in *Cassinelli* that an insurer need not demonstrate prejudice resulting from an insured's failure to effectuate prompt notice; and 2) that Hartford has not shown that Cuso's notice was not practicable given the complexity of the litigation. These arguments, however, are without merit.

In *Star Taxi, supra,* the insured, Las Vegas Star Taxi Company, was sued by a party injured in an automobile accident. Star Taxi felt the accident was covered by its insurance policy but failed to notify its carrier of the injured party's claim until ten days before trial was to commence. After notifying the carrier, but without the carrier's knowledge

or consent, Star Taxi settled the claim for $150,000. Star Taxi then demanded the carrier reimburse it for the settlement amount. When the carrier refused, Star Taxi sued. The trial court, however, granted summary judgment in favor of the carrier and Star Taxi appealed.

In affirming the trial court's grant of summary judgment in favor of the carrier, the Nevada Supreme Court held that timely notice was condition of coverage under the policy and agreed with the trial court that this condition had not been fulfilled. 714 P.2d at 562. The court next considered Star Taxi's contention that even if notice had not been timely, the carrier would still have "to show actual prejudice to avoid liability" and would "need to prove that the settlement figure of $150,000 was excessive." *Id.* at 564. In rejecting this contention, the court explained,

> Reason rejects Star Taxi's position. No insurance company can fairly be called upon under such circumstances to come in and prove that the insured's settlement compromise was excessive or that the insurance company would not under all of the contingencies of the injured party's claim have had to pay the settlement sum or more.

> Under the facts of this case the insurance company cannot be fairly required or expected to prove anything. Star Taxi certainly will not be allowed to obligate itself to pay $150,000 and then be entitled to require the insurance company to pay unless the company can come to court and prove that the settlement figure was too high. Such a position emasculates both the letter and spirit of the insurance contract.

> If we were to consider the question of prejudice raised by Star Taxi, we would have to decide in this case that St. Paul was prejudiced as a matter of law; but it is not necessary to consider the issue here because Star Taxi's conduct in settling the law suit goes far beyond the legitimate limits of the insurance contract as to ab-

solve the insurance company of any liability under the policy.

714 P.2d at 564.

Cuso contends that the last of paragraph of the above-quoted passage "implicitly overrules" the holding in *Cassinelli* that prejudice is immaterial. For the reasons that follow, the Court rejects Cuso's contention and finds that the holding in *Cassinelli* is still good law.

The issues as framed by the Nevada Supreme Court in *Star Taxi* were very similar to those faced by the court nearly forty years earlier in *Cassinelli*.[3] The opinion in *Star Taxi*, however, does not make any reference to *Cassinelli* or its holding which appears, at least to this Court, to be dispositive of the issue of prejudice presented to the court in the latter case. This omission is indeed curious, but would be of more concern to the Court if not for the fact that the opinion in *Star Taxi* does not cite to any case authority in support of its holding, or any case authority at all for that matter.

How then is the omission of *Cassinelli* to be explained? It appears from the opinion that the Nevada Supreme Court chose to explain the absurdity of Star Taxi's arguments through reason and logic rather than simply dismissing them summarily with a case citation to *Cassinelli*. Although some reference to *Cassinelli* would have been helpful in clarifying Nevada law in this area, it appears the Nevada Supreme Court merely chose an alternative method to reach the same result. While the Court acknowledges that *Cassinelli*'s omission is troubling when analyzing its continued validity and precedential value, the Nevada Supreme Court's disposition in *Star Taxi* can hardly be said to

overrule *Cassinelli*'s holding, particularly where *Cassinelli* was not even mentioned and the same outcome would likely have been reached had it been applied. Under these circumstances, this Court will not presume that *Cassinelli* was overruled in the absence of a more definitive statement by the Nevada Supreme Court.

Furthermore, as for the language relied upon by Cuso to the effect that if the court had considered the question of prejudice raised by Star Taxi, it would have decided that the carrier was prejudiced as a matter of law, the Court finds this language is merely dicta and does not overrule the holding in *Cassinelli*.

■ Finally, with regard to Cuso's second contention that the delay should be excused because notice was given as soon as practicable given the complexity of the litigation, the Court finds this argument confuses Cuso's duty to give notice to Hartford of an occurrence "as soon as practicable" with its duty to forward suit papers "immediately." As explained by the Supreme Court of Washington,

> A person may not know that an accident has happened, and may also have doubt as to whether there has been any damage in consequence of an accident, but he is not in doubt, and under no illusions, when he is served with a summons and complaint. The cases refer to many matters that might excuse or justify a delay in giving notice of the happening of an accident, but there seems little justification or excuse for failure of an insured to immediately forward to the insurance company "every demand, notice, summons or other process received by him."

---

**3.** In *Star Taxi*, the issues on appeal were framed by the Nevada Supreme Court as follows:
> The first issue is whether the court erred in determining, as a matter of law, that timely notice to the insurance company was a condition of coverage which was not met by the policy holder. The second issue is whether the insurance company must show prejudice in order to avoid coverage responsibility, even in cases where notice required by the policy was not given.

714 P.2d at 562.

In *Cassinelli*, the issues on appeal were framed as follows:

> The first is that the nature of the loss involved was not covered by the terms of the policy. The second is that the [insured] is precluded from recovery by reason of his failure to give certain notices required by the policy.

216 P.2d at 607. In deciding the second issue, the *Cassinelli* court considered and rejected the argument that a carrier was required to show prejudice where the notice provisions, made conditions precedent by the wording of the policy, were not complied with by the insured. *Id.* at 616.

*Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.,* 50 Wash.2d 443, 313 P.2d 347, 351 (1957).

Accordingly, as the Court finds that Cuso's delay in sending Hartford the suit papers failed to comply with the notice requirements of the Policy, and Hartford is not required to show prejudice, summary judgment in Hartford's favor is appropriate.[4]

IT IS THEREFORE ORDERED THAT Defendant Hartford Accident and Indemnity Company's Countermotion for Summary Judgment (# 32) is Granted.

IT IS FURTHER ORDERED THAT Plaintiff S.B. Corporation's Motion for Partial Summary Judgment (# 30) is Denied.

---

**4.** The Court also rejects Cuso's waiver argument as Hartford reserved its right to rely upon the late notice provision by entering into the "Non-Waiver Agreement" with Cuso. *See Havas v. Atlantic Ins. Co.,* 96 Nev. 586, 614 P.2d 1, 2 (1980) ("Where … the insurer asserts the late notice defense from the outset via a non-waiver agreement, a subsequent denial of coverage on other grounds does not constitute a waiver of the notice defense.").