COLONIAL GAS ENERGY SYSTEM, a Massachusetts trust, Plaintiff,

v.

UNIGARD MUTUAL INSURANCE COMPANY, Allen, Miller & Associates, Inc., and Aerojet-General Corporation, Defendants.

No. C–76–0876–WWS.

United States District Court, N. D. California.

Dec. 1, 1977.

Alioto & Alioto, San Francisco, Cal., Field & Drury, Lowell, Mass., for plaintiff.

Otto F. Becker, Thornton, Taylor & Downs, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

SCHWARZER, District Judge.

Plaintiff Colonial Gas Energy System is a Massachusetts trust and the parent of several natural gas utility companies. One of these companies, Lowell Gas Company of Lowell, Massachusetts, leases a liquid natural gas (LNG) storage tank from its owner, Aerojet-General Corporation, an Ohio corporation with its principal place of business in California. In February 1973, defendant Unigard Mutual Insurance Company, a Washington corporation, acting through defendant Allen, Miller & Associates, a California corporation, issued an insurance policy entitled "All Risks of Physical Loss or Damage" covering the tank.[1]

In October 1973, a frost spot appeared on the surface of the tank leading plaintiff to suspect an internal gas leak. During the summer of 1974, plaintiff emptied the tank and in August 1974, representatives of plaintiff and the owner entered the tank. Following inspections and tests, repairs were undertaken and, on their completion, the tank was refilled and restored to operation by September 13, 1974. On September 20, 1974, plaintiff gave defendant Unigard the first notice of a possible claim under the policy, followed by written notice on January 13, 1975. Defendant denied liability. This action was filed in April 1976, in the California Superior Court in San Francisco, seeking to recover a claimed loss under the policy of $3,257,035. The action was removed to this Court on the basis of diversity of citizenship. 28 U.S.C. § 1441(a). Defendant Unigard has moved for summary judgment on the ground that plaintiff breached the notice clause of the policy.

### The Material Facts

Paragraph Fourteen of the policy states in relevant part:

The insured shall give notice, as soon as practicable, in writing of any loss or damage likely to exceed the deductible to the Insurer's representative . . . who shall immediately notify the Insurer.

The facts material to the question whether the notice clause has been breached are not in dispute.

Plaintiff discovered a frost spot on the exterior of the tank at the 56′ level on October 29, 1973. It immediately began to monitor the spot, having quickly realized the gravity of the situation—the probability of an LNG leak from the inner vessel or its associated piping. Plaintiff promptly gave notice of the frost spot to the owner of the tank and the tank manufacturer, but not defendant. Together, and with the assistance of outside experts, they planned the investigation and repair of the leak.

By March 1974, plaintiff and those working with it determined that the tank had to be emptied, purged with nitrogen and entered in order to locate and repair the damage. This process was difficult and time consuming and involved the danger of explosion. During the spring and early summer of 1974, plaintiff emptied the tank, disposing of 790,027 MCF of LNG at a time when demand was at a seasonal low, thereby aggravating the resulting loss.

Vaporization of the LNG began on April 21, 1974. By August 7, 1974, plaintiff and those working with it had completed the process of emptying and purging the tank of LNG. They then entered the tank and inspected the inner vessel. As a result of their inspection, they determined that the leaks were probably caused by defects in certain pipes which spanned the annular space between the outer and inner tank vessels and penetrated into the inner vessel. These pipes were then welded shut and subsequent pressure tests of the pipes indicated that any leaks in them had been stopped. While the inner vessel was accessible, the owner of the tank also made certain changes "upgrading" the inner and outer piping system.

---

1. For purposes of this motion, defendants Unigard and Allen, Miller & Associates may be treated as a single entity. It is also not necessary to consider the status of the third party defendants in Unigard's subrogation action against the manufacturer of the tank.

On August 25, 1974, all work inside the inner vessel was finished and it was sealed. Vessel cooldown for the reception of LNG commenced September 1, 1974. On September 9, 1974, the tank began to accumulate LNG. The liquefaction cycle was started and the tank was back in operation on September 13, 1974.

On September 20, 1974, seven days later, plaintiff, through its insurance consultants, first notified Unigard's representatives of a "potential claim" under the insurance contract. Its insurance consultant telephoned Unigard's representatives with the message:

> We may have a potential claim here. We are trying to determine what the situation is . . . We are not sure whether there is or is not a loss. We are conducting tests to determine [this] . ..

Plaintiff gave no further notice until January 13, 1975, and it remained unclear during this period whether plaintiff intended to report a loss. On January 13, 1975, plaintiff's insurance consultant submitted the first written claim of loss to Unigard's representatives. The consultant explained that

> the late notice of loss is due entirely to the fact that the engineering department of Lowell [plaintiff's subsidiary] never considered the possibility of insurance coverage.

## The Issue

Plaintiff concedes, as it must on these facts, that its notice of loss was late. Both the oral communication of a "potential claim" and the written notice of loss came after plaintiff had emptied and entered the tank, completed repairs and other changes inside the tank, resealed it and returned it to service. By such late notice, plaintiff clearly breached its agreement with defendant to notify it of a loss "as soon as practicable." The issue is whether the breach, under the applicable law, was sufficiently substantial to relieve defendant of liability under the policy.

## Choice of Law

■ The threshold question concerns the determination whether Massachusetts or California law applies. Under diversity jurisdiction principles, the Court must resolve the choice of law question as California courts would. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The insurance policy was negotiated between J. H. Minet & Co., Ltd., on behalf of plaintiff, and defendant Allen, Miller & Associates on behalf of defendant Unigard. Minet is located in Toronto, Canada, and Allen, Miller & Associates in San Francisco, where it endorsed the policy.

■ Inasmuch as all the critical events surrounding the claim now before the Court occurred in Massachusetts, not California, defendant contends that Massachusetts law should apply. The Court assumes that Massachusetts law would be more favorable to the insurer. Under the prevailing "government interest" approach, however, there is no compelling reason to apply Massachusetts law where the result would be to favor a non-Massachusetts insurer over a Massachusetts insured. *See, Diamond Min. & Management, Inc. v. Globex Minerals, Inc.,* 421 F.Supp. 70, 73 (N.D.Cal.1976); *Hurtado v. Superior Court,* 11 Cal.3d 574, 581, 114 Cal.Rptr. 106, 110, 522 P.2d 666, 671–72 (1974). Accordingly, the Court will assume that California courts would apply California law to decide this controversy.

## Substantial Prejudice

■ The Court takes it to be the settled law in California that mere delay in giving notice of a claim to the insurer does not give rise to a presumption of prejudice and does not constitute a defense to liability under the policy. *Abrams v. American Fidelity & Cas. Co.,* 32 Cal.2d 233, 195 P.2d 797 (1948). Moreover, although some of the decisions have involved breaches of a cooperation rather than a notice clause, it is clear that the burden is on the insurer to prove that it suffered substantial prejudice as the result of the insured's breach; such

prejudice may be established as a matter of law. *Campbell v. Allstate Insurance Co.*, 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155 (1963); *Northwestern Title Security Co. v. Flack*, 6 Cal.App.3d 134, 85 Cal.Rptr. 693, 696 (hearing denied, 1970). Finally, in *Billington v. Interinsurance Exchange of So. Cal.*, 71 Cal.2d 728, 79 Cal.Rptr. 326, 331, 456 P.2d 982 (1969), involving a breach of a cooperation clause, the court held substantial prejudice to require proof of a substantial likelihood that the trier of fact would reach a decision favorable to the insurer.

Plaintiff places heavy reliance on these decisions, and on certain others applying the stated principles. None, however, involves a fact situation analogous to the instant case, and in none, with the exception of *Billington*, discussed below, did the insurer demonstrate resulting prejudice.

Plaintiff also cites *Associated Engineers, Inc. v. American Nat. Fire Ins. Co.*, 175 F.Supp. 352 (N.D.Cal.1959), where the insured under an all risk of physical loss policy did not give notice of loss to the insured until after repairs to an underground sewer line had been completed. But in that case there was no claim that the loss was attributable to any defect in the underground pipes; it was agreed that the loss was caused by the negligence of the insured contractor and the insurer offered no proof of prejudice resulting from the late notice. Similarly, *Gibson v. Colonial Ins. Co.*, 92 Cal.App.2d 33, 206 P.2d 387 (1949), does not help plaintiff. Gibson was injured while unloading steel sheets when the master ring on a hoist broke, causing the sheets to slide against his leg. The insurer contended that delay in giving notice prevented it from making a prompt investigation and pointed to the fact that at the time of its investigation the broken master ring could not be located. Plaintiff did not claim, however, that the ring was defective and its availability was therefore not material to the defense of the action.

The California cases undoubtedly place a heavy burden on an insurer seeking to defend on the ground of breach of the notice clause. But none of the cases cited by plaintiff supports its position here.

In this case, plaintiff seeks to recover under the policy on the basis of a claim that pipes in the interior of the tank had been defectively welded in the course of manufacture, causing the leak. Defendant denies the claim, contending that it falls within the exclusion under the policy for "wear, tear, gradual deterioration, rust, dry rot or mold." As a part of its opposition to the motion for summary judgment, plaintiff asserts that whether the leak was caused by wear, tear, deterioration or corrosion or by faulty welding is a genuine issue of material fact requiring trial. In one of its memoranda to the Court, plaintiff has the following to say about its case:

In the present case there has been a loss sustained to plaintiffs' [sic] LNG facility which loss consists of the cost of repair and "down time" as a result of a leak of liquid methane gas into the perlite insulation between the inner and outer shells of the tank. Plaintiff can show that the leak was localized at a particular pipe which spanned the insulation gap between the shells. When the tank was drained, the offending pipe plugged and the tank refilled, the frost spot on the exterior of the tank did not recur and there was no visible or measurable manifestation of continued deficiency. It is significant to note that testing of the pipe has revealed that there was no significant incidence of rust or corrosion in either the pipe or the tank. Furthermore, it is also significant that only one pipe out of several which connected to the LNG facility developed leakage problems during the course of their service.

It is indisputable that by its failure to give defendant notice before the repairs were made and the tank resealed, plaintiff denied defendant access to the interior of the tank and thereby to the evidence on which its own claim is based. Having made its own investigation, plaintiff precluded defendant from making any investigation into the matters which are material to the dispute, such as whether the leak was localized at a particular pipe and

whether there was significant incidence of rust or corrosion or, as plaintiff claims, only defective welding.[2]

The prejudicial consequences of plaintiff's actions are further aggravated because in this case defendant, to prevail, must itself prove by a preponderance of the evidence that the cause of plaintiff's loss fell within one of the policy exclusions. *See, Strubble v. United Services Auto Assoc.*, 35 Cal.App.3d 498, 110 Cal.Rptr. 828 (1973). Having proved its loss resulting from a leak in the tank, plaintiff has made a case entitling it to recover. Defendant's only defense on the merits of the claim is founded on the clause which excludes losses caused by wear, tear, deterioration or rust. Plaintiff's actions in altering and resealing the tank before giving notice of the claim has made the only source of evidence capable of establishing that defense inaccessible, if not nonexistent.[3]

This case does not turn on the question whether plaintiff delayed unreasonably in giving notice. Rather, the issue is one of timing, or, specifically, withholding notice of a possible claim until the insured had rendered the evidence material to a policy defense unavailable to defendant. The present case must be distinguished from *Billington v. Interinsurance Exchange of So. Cal., supra.* In that case, a default judgment was entered against the insured because he refused to appear for his deposition. In defending against the action to collect the judgment, the insurance company claimed that the insured's failure to cooperate caused it substantial prejudice by precluding it from presenting at a trial the defense of assumption of risk. That defense was based on the testimony of witnesses that the insured had been so obviously drunk that plaintiff's injuries suffered while riding in a car with him were the result of her own voluntary act. The Supreme Court held prejudice could not be presumed but would have to be determined by the trial court on the basis of the evidence of the insured's drunkenness and appearance.

The distinction is that in *Billington* the evidence of obvious drunkenness on which the insurer's defense would have been based remained available, permitting the trial court to determine whether a trier of fact would likely have found in favor of the insured, had he not defaulted, thereby relieving the insurance company of liability. In the present case, plaintiff's alteration and resealing of the tank makes it impossible to engage in the process *Billington* mandates. Plaintiff by its conduct has prevented defendant from proving to a trier of fact that had defendant been able to inspect the interior of the tank, it would have discovered evidence that would likely have resulted in a favorable termination of this action.[4]

In those circumstances, the Court concludes that substantial prejudice has been

**2.** Plaintiff argues that defendant would not have made the inspection even had it received notice and would in any event not have incurred the cost of entering the annular space between the outer and the inner vessel. In ruling on this motion, the Court is concerned only with plaintiff's denial to defendant of equal access to the interior of the inner tank where plaintiff performed its inspections and repairs and which would be the source of any evidence material to the claim and any defense. Speculation as to what defendant might or might not have done is irrelevant.

**3.** Plaintiff argues that defendant has available to it the reports prepared by plaintiff and its experts. Needless to say, the authors of those reports had no incentive to find evidence which would have excluded the loss from coverage, and the deposition testimony in fact reflects that they were not concerned with finding the cause of the leak, as opposed to its location and cure.

**4.** In support of its claim of substantial prejudice, defendant argues that evidence exists that the manufacturer erroneously used carbon rather than stainless steel for one of the pipes in the tank. Inasmuch as carbon steel is said to be corrosive under cryogenic conditions, defendant argues that a basis exists for finding that corrosion may well have been the cause of the leak. The asserted facts are insufficient, even assuming them to be true, to make a determination of the probable merit of the defense of exclusion under the policy. They are sufficient, however, to corroborate the conclusion that an inspection of the interior of the tank is material to the preparation of any defense by defendant on the merits.

shown as a matter of law.[5] No cases have been found which would support a different conclusion on these facts. To hold otherwise would give an insured carte blanche to withhold notice of a claim until facts or witnesses material to the defense against its claim have been made unavailable and then reap the benefits of its own conduct by contending that the absence of those facts and witnesses precludes a finding of substantial prejudice.[6]

■ Plaintiff contends, however, that after the filing of this action in 1976 it offered to give defendant access to the interior of the tank, albeit at defendant's expense. The parties agree that this expense would be substantial; depending on the time of year and the cost of disposing of the LNG stored in the tank, it appears the cost could well exceed $100,000 or even $200,000. In addition, it is far from clear that access to the interior of the tank after completion of the repairs and modifications would provide defendant with the same opportunity to discover evidence helpful to its defense as if it had been given access when the tank was first inspected by plaintiff. Nevertheless, it cannot be said with assurance at this time whether the substantial prejudice suffered by defendant may not be cured if it is given access at this time to make whatever inspection of the interior it considers to be necessary and appropriate.

Accordingly, the Court will defer entry of judgment for defendant until January 9, 1978, in order to give plaintiff an opportunity, if it wishes, to submit to defendant an unconditional written offer of access to the interior of the tank at plaintiff's expense at a time to be fixed by plaintiff which shall be on or before August 1, 1978, for the purpose of making whatever inspection and tests defendant desires to make at defendant's expense. If the Court has received no written notice of such an offer by January 9, 1978, judgment will be entered for defendant. If written notice of such an offer is received, and plaintiff thereafter obtains all necessary approvals, empties the tank and opens the inner vessel to inspection by defendant within the time specified, final decision on the pending motion will be deferred until after the Court has been advised of the results of the inspection.

IT IS SO ORDERED.

---

5. Defendant also urges two additional grounds for finding substantial prejudice: (1) that the delay in giving notice prejudiced its subrogation rights against the manufacturer, and (2) that the failure to advise it promptly of the need to empty the tank deprived it of an opportunity to mitigate the loss from the sale of the LNG. The second ground remains available as a defense based on plaintiff's duty to mitigate damages. The first ground is complex and murky at best; in the light of the disposition of this motion, it is unnecessary to decide it, at least at this time.

6. Although an explanation or justification for the failure to give timely notice would not necessarily dispel the substantial prejudice that has been caused (*see, Hanover Insurance Co. v. Carroll*, 241 Cal.App.2d 558, 50 Cal.Rptr. 704, 712 (hearing denied, 1966)), it could be relevant to the application of the *Billington* rule to the facts of a particular case. Thus, it is relevant here that plaintiff has offered no explanation for its withholding of notice of the claim until after the repairs had been completed and the tank sealed. The record belies the ostensible reason given in January 1975, that "the engineering department . . . never considered the possibility of insurance coverage." Rather, it establishes that plaintiff was aware of the existence of a possible claim under the policy at least two or three months before it first entered the tank itself and began the repairs; the chairman of its board testified that in April or May 1974, he instructed plaintiff's engineering vice-president to keep full records to support a possible future insurance claim but decided not to notify defendant until all the figures making up the claim were available.