922 P.2d 126 (1996)
83 Wash.App. 432
PEDERSON'S FRYER FARMS, INC., a Washington corporation, Respondent,
v.
TRANSAMERICA INSURANCE COMPANY, a California corporation, Appellant.
Nos. 17869-9-II, 19025-7-II.
Court of Appeals of Washington, Division 2.
September 6, 1996.
*130 Michael James Bond, John Robert Zeldenrust, Lee Smart Cook Martin & Patterson, Seattle, for appellant.
Clark J. Davis, Mark Ronald Roberts, Davies Pearson, PC., Tacoma, for respondent. *127 *128
*129 TURNER, Judge.
In this declaratory judgment action, the jury returned a verdict in favor of Pederson's for the cost of cleaning up contamination caused by an underground gasoline storage tank. On appeal, the insurer argues that the trial court erred in denying its motion for a directed verdict, in instructing the jury, in failing to reduce the verdict, in awarding prejudgment interest, and in denying a motion to vacate an attorney fees award in favor of the insured. Transamerica failed to convince the jury that Pederson's actions caused it actual and substantial prejudice. Giving great deference to the jury's role as the finder of fact, we affirm.

FACTS
Pederson's Fryer Farms, Inc., (Pederson's) commenced this declaratory judgment action against Transamerica Insurance Company (Transamerica). Pederson's sought to recover expenses for cleaning up contamination from an underground gasoline storage tank. The tank was on Pederson's property when Pederson's purchased it in 1981. A few of Pederson's employees testified that Pederson's used the tank for four to six months during 1981-1982. During that time, gasoline was disappearing from the tank.
In 1989, Pederson's received notice from the Department of Ecology (DOE) that all underground storage tanks must either be certified or removed. Pederson's elected to remove the fuel tank. When the tank was removed, Pederson's discovered that the bottom had holes in it. Pederson's informed DOE of the leak and hired a contractor to remove the contaminated soil. The contractor hired PLSA Engineering & Surveying (PLSA) to evaluate the contamination and assist in the cleanup. The PLSA engineer, Brad Card, determined the soil was contaminated by aged gasoline.
*131 Pederson's worked with DOE to establish a cleanup plan and understood from their communications that it was obligated to clean up the contamination. During excavation of the contaminated soil, engineer Card discovered that groundwater had also been contaminated.
In April 1991, engineer Card reported that the cleanup was complete. By letter dated April 9, 1991, Pederson's notified Transamerica of its claim for the cleanup costs. Transamerica had issued general liability policies to Pederson's covering the years 1981 to 1985. Pederson's claimed that the groundwater was contaminated and gasoline had migrated from the tank to adjoining property during the policy period.
After investigating information provided by Pederson's, Transamerica denied coverage. Pederson's threatened to sue its insurers. Two other insurers settled with Pederson's for approximately $32,000. Pederson's subsequently sued Transamerica to recover costs expended in the cleanup. The jury rendered a verdict in favor of Pederson's. Transamerica appeals, contending that the trial court erred in many respects.

ANALYSIS

Denial of Motion for Directed Verdict
At the close of Pederson's case, Transamerica moved for a directed verdict, which was denied. Transamerica argues that it was entitled to a directed verdict on two grounds. First, it asserts that Pederson's failed to comply with coverage terms. Second, Transamerica claims that Pederson's failed to show that property damage was covered by the policy.
In reviewing a denial of a motion for directed verdict, this court employs the same standard as the trial court. Peterson v. Littlejohn, 56 Wash.App. 1, 8, 781 P.2d 1329 (1989).
A directed verdict ... is appropriate if, when viewing the material evidence most favorable to the nonmoving party, the court can say, as a matter of law, that there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party....
The inquiry on appeal is limited to whether the evidence presented was sufficient to sustain the jury's verdict.
Industrial Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wash.2d 907, 915-16, 792 P.2d 520 (1990).

A. Prejudice as a Matter of Law
Transamerica claims that Pederson's breached the insurance contract by: (1) failing to notify Transamerica of an occurrence as soon as practical; (2) making voluntary payments for cleanup of the contamination; (3) destroying physical evidence of the contamination; and (4) failing to assert defenses to the obligation to clean up the contamination. Transamerica asserts that Pederson's breaches prejudiced it to such an extent that its duty to pay insurance proceeds was discharged.
Even where an insured breaches the insurance contract, the insurer is not relieved of its duty to pay unless it can prove actual and substantial prejudice caused by the insured. See, e.g., Oregon Auto. Ins. Co. v. Salzberg, 85 Wash.2d 372, 376-77, 535 P.2d 816 (1975); Pulse v. Northwest Farm Bureau Ins. Co., 18 Wash.App. 59, 60-61, 566 P.2d 577, review denied, 89 Wash.2d 1011 (1977), and cases cited therein. Whether an insured breached its obligations under the insurance contract and whether the insurer was prejudiced thereby are factual determinations to be resolved by the trier of fact. Salzberg, 85 Wash.2d at 377, 535 P.2d 816; Felice v. St. Paul Fire & Marine Ins. Co., 42 Wash.App. 352, 358, 711 P.2d 1066 (1985), review denied, 105 Wash.2d 1014 (1986); Pulse, 18 Wash.App. at 62, 566 P.2d 577. Prejudice is presumed only in extreme cases. Salzberg, 85 Wash.2d 372, 535 P.2d 816; Felice, 42 Wash.App. 352, 711 P.2d 1066; Pulse, 18 Wash.App. at 62, 566 P.2d 577. For example, in Thompson v. Grange Ins. Ass'n, 34 Wash.App. 151, 660 P.2d 307, review denied, 99 Wash.2d 1011 (1983), the policy required notice of a claim to be given "as soon as practical." The plaintiffs did not notify the insurer of its claim for almost five years. Nevertheless, this court affirmed a finding that Grange was not prejudiced by *132 Thompson's delay, stating: "Despite the statute of limitation now barring the pursuit of any claim against the tortfeasor, Grange never demonstrated that such person had any assets it might have recovered." Thompson, 34 Wash.App. at 163-64, 660 P.2d 307. Because Grange failed to establish actual prejudice, it was obligated to pay the insurance proceeds.
In Pulse, 18 Wash.App. 59, 566 P.2d 577, the insureds defended a suit for property damage caused by their cattle. The insureds were found liable and asked the insurer to pay the judgment. The insurer moved for summary judgment claiming the insured violated the insurance policy by failing to cooperate or give proper notice. The Court of Appeals reversed the grant of summary judgment, ruling that "prejudice will be presumed only in extreme cases and is ... an issue upon which one claiming prejudice has the affirmative burden of proof." Pulse, 18 Wash.App. at 62, 566 P.2d 577.
Washington courts have found prejudice as a matter of law in only a few cases and then only when a trial on the insured's liability had already occurred or was impending. Sears, Roebuck & Co. v. Hartford Acc. & Indem. Co., 50 Wash.2d 443, 313 P.2d 347 (1957); Felice, 42 Wash.App. 352, 711 P.2d 1066.[1] For instance, in Sears, the court found the insurer was prejudiced as a matter of law where the insured gave notice a week before trial, even though it was sued thirteen months beforehand. The court noted that the purpose of the notice requirement is to allow the insurer to prepare a defense and control the litigation. Sears, 50 Wash.2d at 451, 313 P.2d 347. Similarly, in Felice, 42 Wash.App. 352, 711 P.2d 1066, the court held the insurer was prejudiced as a matter of law by an insured's noncompliance with the notice provision. Felice did not inform his insurer of an action until after judgment and only one day remained to appeal. The insurer denied coverage because late notice precluded it from investigating the case. The Court of Appeals affirmed summary judgment in favor of the insurer. Felice, 42 Wash.App. at 360, 711 P.2d 1066.
1. Breach of Notice Provision
Transamerica failed to show that Pederson's breach of the notice requirement caused it actual prejudice. The record reveals that Pederson's likely discovered in late 1990 or early 1991 that contamination from the gasoline leak spread to adjacent property or groundwater.[2] Before such discovery, Pederson's had no reason to contact its insurer as it had not encountered any property damage covered by its Transamerica insurance policy, which covered only liability to third parties. Pederson's notified Transamerica of its claim on April 11, 1991. Transamerica fails to indicate how this delay hampered its ability to investigate, evaluate or defend against the State's assertion that Pederson's was required to remedy the contamination. Also, Pederson's did not deprive Transamerica of its right to control the litigation, as no action was filed against Pederson's.
Moreover, Transamerica failed to show that it could validly have disputed Pederson's liability for the cleanup had it been informed of the occurrence earlier. The Model Toxics Control Act (MTCA) provides in RCW 70.105D.040 that "[t]he owner or operator of the facility" is "strictly liable, jointly and severally, for all remedial action costs and for all natural resource damages resulting from the releases or threatened *133 releases of hazardous substances." See also Weyerhaeuser Co. v. Aetna Cas. & Sur. Co., 123 Wash.2d 891, 874 P.2d 142 (1994); Car Wash Enter., Inc. v. Kampanos, 74 Wash. App. 537, 544, 874 P.2d 868 (1994). The only defenses are those listed in RCW 70.105D.040. Subsection (3) provides that a person is not liable if he or she can establish that the release was caused solely by an act of God, an act of war or an act or omission of an unrelated third party. RCW 70.105D.040(3)(a). The statute also provides that an owner or purchaser of a facility may be entitled to the so called "innocent purchaser defense." To be entitled to this defense, an owner must establish that at the time the facility was acquired: (1) the person had no knowledge or reason to know that any hazardous substance had been released or disposed of on, in, or at the facility; and (2) the person undertook all appropriate inquiry into the previous ownership and uses of the property, consistent with good commercial or customary practice, in an effort to minimize liability. Furthermore, the person must have in no way caused or contributed to the release or threatened release of a hazardous substance at the facility. RCW 70.105D.040(3)(b).
In the present case, Pederson's was strictly liable for the cost of cleanup. The record does not indicate that any of the defenses apply. We fail to see how earlier or timely notice would have allowed Transamerica to establish that the release was caused "solely" by an act of God, war, or an act or omission of a third party. Also, the "innocent purchaser defense" does not apply; it cannot be said that Pederson's in no way caused or contributed to the release of a hazardous substance at the site. Pederson's was using the fuel tank and noted an unexplained loss of gasoline. This circumstantially establishes that the fuel tank was leaking at that time. Further, there is no evidence that Pederson's conducted appropriate inquiries prior to purchasing the property so as to limit its liability. Transamerica produced no expert testimony to show the approximate date of release could be determined by examining the soil or the holes in the fuel tank. If it had, then actual prejudice might have been inferred from the delay in notice and the consequent inability to examine physical evidence of the release. "It is clear, however, that the insurer must demonstrate some concrete detriment resulting from the delay which harms the insurer's preparation or presentation of defenses to coverage or liability." Canron, Inc. v. Federal Ins. Co., 82 Wash.App. 480, 486, 918 P.2d 937 (1996).
We do not see how Transamerica could have presented a successful "innocent purchaser defense" had it been notified of the occurrence earlier. Transamerica had ample opportunity to interview Pederson's personnel. Its investigation disclosed no evidence that Pederson's had knowledge of any pre-acquisition release of contamination, or that Pederson's conducted appropriate inquiries into previous ownership and uses of the property. The delay did not impair Transamerica's ability to make these investigations. Whatever investigations Transamerica did make, they did not yield evidence supporting the application of any defenses. Transamerica was not prejudiced by the delayed notice.[3]
In sum, Transamerica was not prejudiced, as a matter of law, by Pederson's prompt and proper response to the contamination.
*134 2. Destruction of Physical Evidence
Transamerica also does not demonstrate how removal and destruction of the fuel tank or disposal of contaminated soil resulted in substantial and actual prejudice. Transamerica relies on West Bay Exploration Co. v. AIG Specialty Agencies of Tex., Inc., 915 F.2d 1030 (6th Cir.1990), and Colonial Gas Energy Sys. v. Unigard Mut. Ins. Co., 441 F.Supp. 765 (N.D.Cal.1977), where the courts found that the insured's destruction of certain evidence prejudiced the insurer as a matter of law.
The above cases are distinguishable. In both, the insured destroyed material evidence, relevant to an exclusion in the insurance policy. In West Bay Exploration, 915 F.2d 1030, the insured destroyed drip barrels, intentionally perforated to allow contaminants to seep into the ground. The policy excluded liability for gradual and intentional pollution. Evidence of intentionally perforated barrels was essential to a defense based on the exclusion. Likewise, in Colonial Gas, 441 F.Supp. 765, the insured repaired and resealed a liquid natural gas tank that developed an internal leak. The insurance contract covered defective welding but excluded liability for gradual deterioration. The insured destroyed the only evidence as to whether the leak was caused by defective welding or gradual deterioration.
Here, Transamerica has not shown how the fuel tank and contaminated soil are relevant to a policy exclusion. Additionally, it does not even allege that examination of the tank or the soil could help determine whether contamination migrated to adjacent property or groundwater within the policy period. Also, unlike the insureds in the above cases, Pederson's was unaware that it had a policy claim when the fuel tank and soil were removed.
3. Voluntary Cleanup
The MTCA imposes strict liability on the owner of a facility where a release has occurred. Transamerica was not prejudiced, therefore, by Pederson's voluntary cleanup or failure to assert alleged defenses. Pederson's was responsible for the cleanup because it was the owner of the facility. Fuel was disappearing from the tank, and it can be inferred that fuel was released while Pederson's owned the facility. Defenses to liability under the MTCA are strictly limited. Transamerica did not introduce evidence regarding defenses to strict liability, and therefore it did not demonstrate it was prejudiced.
4. Failure to Control Cost of Cleanup
Finally, Transamerica did not establish it was prejudiced by Pederson's alleged failure to control cleanup costs. The record indicates that Pederson's attempted to control the remediation cost. Although Pederson's branch manager said the excavation contractor was over-charging for fill dirt, he also testified that as soon as cheaper dirt was discovered elsewhere, Pederson's completed the filling itself. Transamerica did not produce evidence that the remediation could have been accomplished for less.
In sum, Transamerica failed to meet its burden to show it was actually and substantially prejudiced by any breach of a coverage term. Accordingly, the trial court properly found this was not an extreme case in which prejudice should be presumed. Transamerica's motion for directed verdict on the ground of prejudice was properly denied. The matter was properly put to the jury and the verdict stands.

B. Proof of Damage to Covered Property During Policy Period
Transamerica contends it was entitled to a directed verdict because Pederson's failed to establish damage to covered property during the policy period. Compensable damage occurring during the policy period "triggers" an insurer's obligation to pay. See, e.g., Villella v. Pemco, 106 Wash.2d 806, 812-14, 725 P.2d 957 (1986) and cases cited therein; Fujii v. State Farm Fire & Cas. Co., 71 Wash.App. 248, 857 P.2d 1051 (1993), review denied, 123 Wash.2d 1009, 869 P.2d 1085 (1994).
Again, whether damage occurred during the policy period is a factual determination to be made by the trier of fact. Only if there is no substantial evidence or reasonable inference therefrom, is it appropriate to *135 remove the matter from the jury's consideration. See Kallevig, 114 Wash.2d at 915-16, 792 P.2d 520. Because there is evidence from which the jury could infer that there was damage during the policy period, we refuse to invade the province of the jury.
Pederson's insurance provided coverage for injury to property of a third party that occurred during the policy period. Pederson's sufficiently established that the contamination from its fuel tank had damaged groundwater during the policy period. Groundwater constitutes third party property because it is owned by the public. See RCW 90.44.040 ("all natural ground waters of the state ... are hereby declared to be public ground waters and to belong to the public...."). See also Olds-Olympic, Inc. v. Commercial Union Ins. Co., 129 Wash.2d 464, 918 P.2d 923 (1996). There was evidence that approximately 120 to 140 gallons of fuel oil leaked from the underground storage tank during the applicable policy period. The evidence also showed that groundwater levels rose seasonally to within eight feet of the surface. Viewing the evidence, as we must, in a light most favorable to Pederson's, it can reasonably be inferred that the fuel oil contaminated the groundwater during the policy period. Pederson's was obligated, under RCW 70.105D.040, to pay the cost of remediation. Cleanup costs incurred in response to hazardous wastes leaking into the ground contaminating the groundwater constitute property damage under a general liability insurance policy. Olds Olympic, 129 Wash.2d 464, 918 P.2d 923. Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 886-7, 784 P.2d 507 (1990). Because the groundwater was contaminated, coverage exists here.
It is interesting, however, that a majority of jurisdictions hold that coverage exists under general liability policies even where contamination on an insured's property merely threatens property of others.[4] For example, the court in Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1564 (9th Cir.1991), allowed recovery of costs incurred to correct groundwater contamination that had taken place and to mitigate any future damage that might occur from contaminates introduced into the soil, even though when the source of the contamination was on the insured's own property. The reasoning behind such rulings was expressed in Allstate Ins. Co. v. Quinn Const. Co., 713 F.Supp. 35, 41 (D.Mass.1989), vacated without opinion, 784 F.Supp. 927 (D.Mass.1990):
the property owner ... should not forfeit coverage by promptly cleaning up contamination rather than waiting for it to cause serious environmental damage. In the unique context of environmental contamination, where prevention can be far more economical than post-incident cure, it serves no legitimate purpose to assert that soil and groundwater pollution must be allowed to spread over boundary lines before they can be said to have caused the damage to other people's property which liability insurance is intended to indemnify.[5]
*136 The Washington State Supreme Court in Olds-Olympic sets forth the law in Washington by citing the following example of when costs are or are not incurred "because of" property damage:
The issue of when costs are or are not incurred "because of" property damage is illustrated in Aerojet[-General Corp. v. San Mateo County Superior Court, 211 Cal.App.3d 216, 257 Cal.Rptr. 621, 635, (1989) ], by the following hypothetical: ... Petitioners have two underground storage tanks for toxic waste. Tank # 1 has leaked wastes into the soil which have migrated to the groundwater or otherwise polluted the environment. Tank # 2 has not leaked, but government inspectors discover that it does not comply with regulatory requirements, and could eventually leak unless corrective measures are taken. Response costs associated with Tank # 1 will be covered as damages, because pollution has occurred. Tank # 2 would not be covered.
(citing Boeing, 113 Wash.2d at 886, 784 P.2d 507 (emphasis added)).
Here, because contamination migrated to the groundwater, under Olds-Olympic and Boeing v. Aetna, cleanup costs for hazardous wastes leaking into the ground and contaminating the groundwater constitute recoverable property damage under the liability insurance policy. Therefore, we conclude that here, the loss is covered and the owned property exclusion does not apply.
Pederson's introduced substantial evidence from which a trier of fact could reasonably conclude that it sustained a compensable loss during the policy period. A directed verdict in favor of Transamerica was, therefore, inappropriate. We defer to the determination made by the jury in this case.

Instructional Error
Transamerica claims the trial court's instructions prevented it from arguing its theory of the case, misled the jury about the burden of proof, and failed to tell the jury the law.
Instructions are sufficient if they permit each party to argue its theory of the case, are not misleading and, when read as a whole, properly inform the trier of fact of the applicable law. Hyatt v. Sellen Const. Co., Inc., 40 Wash.App. 893, 700 P.2d 1164 (1985). "The refusal to give a requested instruction is reviewed for abuse of discretion." Savage v. State, 72 Wash.App. 483, 492, 864 P.2d 1009, aff'd in part, rev'd in part on other grounds, 127 Wash.2d 434, 899 P.2d 1270 (1995); see also Falk v. Rose, 18 Wash.2d 333, 335, 139 P.2d 634 (1943). A party is entitled to an instruction only if the proposed instruction accurately states the law and substantial evidence exists that the proposed instruction applies to the case. See Thogerson v. Heiner, 66 Wash.App. 466, 474, 832 P.2d 508 (1992).
Transamerica challenges an instruction stating that Transamerica bore the burden of proving Pederson's failure to comply with the policy. Transamerica also argues that the burden is on Pederson's to show that the loss is covered by the policy. See Waite v. Aetna Cas. & Sur. Co., 77 Wash.2d 850, 853, 467 P.2d 847 (1970). We hold that the trial court properly instructed the jury that Pederson's had to prove a loss covered by the policy.
Jury instruction number 8 stated, "[t]he plaintiff has the burden of proving by a preponderance of the evidence that the loss is within the coverage of the insurance policy. The plaintiff meets its burden by proving that an occurrence [sic] between March 31, 1980 to July 1, 1985 caused property *137 damage." The trial court also correctly instructed the jury on Transamerica's burden to prove non-fulfillment of a condition.[6] Transamerica's proposed instruction that said Pederson's had the burden of proving "[c]ompliance with all conditions of the insurance policy" was properly rejected.[7] Even if the insured breaches its obligations under the insurance contract, the insurer must pay the insurance proceeds unless it was prejudiced. Accordingly, the insured need not prove compliance with the contract in order to be entitled to the insurance proceeds. Rather, to preclude recovery under an insurance contract, the insurer bears the burden of proving that noncompliance by the insured prejudiced the insurer. The court's placement of the burden on Transamerica to prove breach and subsequent prejudice is consistent with Washington law.
Transamerica also argues that instructions 8 and 17[8] were erroneous and instead, the jury should have been instructed that Transamerica had to pay only such sums that Pederson's legally owed because of property damage covered by the insurance.[9] Transamerica contends that the instructions precluded it from arguing that Pederson's was not legally obligated to pay damages. Our Supreme Court, however, in Boeing v. Aetna, 113 Wash.2d 869, 784 P.2d 507, held that response costs to remedy an actual release of hazardous substances constitute "damages" within the meaning of general liability policies.
Instruction 8 clearly states that Pederson's bore the burden of proving an occurrence within the period of the policy that caused property damage. The insurance contract defines property damage as damage to the property of others. Instruction 8 did not impair Transamerica's ability to argue its theory. Instruction 8 did omit policy language that said the insurer was obligated to pay the insured for sums "which the insured shall become legally obligated to pay." Pederson's, however, was strictly liable for remediation of the contamination pursuant to the MTCA and Transamerica did not present evidence that any exception to strict liability applied. Thus, the omission was harmless.
Transamerica argues that Instruction 17 implied that the contract covered money spent by Pederson's which it did not legally owe. The instruction stated that if the jury renders a verdict in favor of Pederson's, it must award Pederson's the amount of money it has "spent or become[s] obligated to pay for clean up [sic ]." Pederson's, however, was obligated to pay for all cleanup costs submitted during trial. The court's slight deviation from the policy language was harmless.
Transamerica argues that the trial court's instruction 12[10] regarding prejudice *138 was incomplete.[11] We hold there was no error. The trial court properly instructed the jury that Transamerica's ability to investigate and defend are factors bearing on whether it was prejudiced. The factual circumstances noted by Transamerica bear on its ability to investigate and defend and thus are necessarily covered by the court's instruction. Similarly, that Transamerica had rights to investigate, evaluate and defend claims and protect its rights is implied by the court's instruction. We also reject Transamerica's assertion that Instruction 12 improperly shifted the burden of proof to the insurer. Transamerica bore the burden of proving it was prejudiced.
Transamerica argues that the trial court erred in not instructing the jury on the insurance contract's "no action clause".[12] Transamerica claims the absence of a judgment against Pederson's indicates payment of cleanup costs were voluntary. It could have made this argument without a special instruction, however. The court's instructions allowed Transamerica to argue that Pederson's was not legally obligated to pay for the cost of cleanup. Moreover, had the court given Transamerica's proposed instruction and the jury concluded the condition was breached, Transamerica still had to prove prejudice. It failed to do so. Therefore, not giving the instruction was harmless.
Transamerica asserts that the trial court erred by instructing the jury that "[i]nsurance policy language is interpreted as it would be understood by an average person." The instruction, however, did not ask the jury to conduct any interpretation. Rather, it appears that the court interpreted the contract and instructed the jury on the contract's requirements. Although this instruction was unnecessary, it is an accurate statement of the law. Giving the instruction was harmless.
Finally, Transamerica argues that the trial court erred in refusing to instruct the jury that Pederson's had a duty of good faith. It was unnecessary to instruct the jury on this. Transamerica was permitted to argue that Pederson's conduct impaired its ability to investigate and defend the claim. Transamerica fails to indicate how an instruction about this additional duty would have affected the outcome of the case. The trial court did not err in refusing to give this instruction.[13]

Reduction of Award
Transamerica contends the trial court erred in refusing to reduce the judgment *139 by the amount of Pederson's recovery from another insurer. Transamerica argues that Pederson's will recover more than it expended in cleaning up the contamination and thus receive an inappropriate "double recovery." See Platts v. Arney, 50 Wash.2d 42, 309 P.2d 372 (1957). Transamerica also points to its "other insurance" provision, which states that insurance under its policy is in excess of all other valid insurance.
The settlement, however, was not mere payment for Pederson's cleanup costs; it was in exchange for a release of liability for all past, present and future environmental claims. Transamerica did not demonstrate what part, if any, of the settlement was attributable to cleanup costs. Thus, no showing of double recovery was made. The trial court acted appropriately by not reducing the award.

Award of Prejudgment Interest
Transamerica argues that the amount of Pederson's claim was unliquidated, so the trial court erred when it awarded Pederson's prejudgment interest. We disagree.
It is appropriate for a court to award prejudgment interest when the character of the underlying claim is liquidated. PUD No. 1 of Klickitat Co. v. International Ins. Co., 124 Wash.2d 789, 810, 881 P.2d 1020 (1994); Prier v. Refrigeration Eng'g Co., 74 Wash.2d 25, 32, 442 P.2d 621 (1968) (citing C. McCormick, Damages (Hornbook Series) § 54 (1935)). A claim is considered liquidated if "its amount is readily determinable and it is possible to determine the exact amount without reliance on opinion." International Ins., 124 Wash.2d at 810, 881 P.2d 1020. A dispute over the claim does not change the character of the claim from liquidated to unliquidated. Prier, 74 Wash.2d at 33, 442 P.2d 621.
We affirm the trial court's award of prejudgment interest because Pederson's cost for cleanup was liquidated. The amount Pederson's expended for cleanup was clearly established at trial through introduction of the bills it received and paid. The amount expended to clean up the contamination was a sum certain. See Car Wash, 74 Wash.App. at 549, 874 P.2d 868; King County v. Puget Sound Power & Light Co., 70 Wash.App. 58, 852 P.2d 313, review denied, 122 Wash.2d 1017, 863 P.2d 1352 (1993).

CR 60(b) Motion to Vacate Attorney Fees Award
Transamerica challenges the trial court's denial of its CR 60(b) motion to vacate the award of Pederson's attorney fees. It argues that International Ins., 124 Wash.2d 789, 881 P.2d 1020, changed existing law by making it inappropriate to award attorney fees to an insured who has failed to comply with coverage terms. Additionally, Transamerica asserts that the trial court erred by awarding attorney fees to Pederson's for defense of the CR 60(b) motion.
After the jury verdict was entered, the trial court awarded Pederson's attorney fees and costs based on Olympic S.S. Co., Inc. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991). In Olympic S.S., the Supreme Court held that "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." Olympic S.S., 117 Wash.2d at 53, 811 P.2d 673. The general rule enunciated in Olympic S.S. was recently reaffirmed in McGreevy v. Oregon Mut. Ins. Co., 128 Wash.2d 26, 904 P.2d 731 (1995). Pursuant to the Olympic S.S. rule, in December 1993 the trial court awarded Pederson's attorney fees in the amount of $74,605.00 and costs in the amount of $8,244.59. Transamerica did not oppose Pederson's right to obtain fees, but did claim the fee award was excessive.
In October 1994, the Supreme Court decided International Ins. After noting that, generally, Olympic S.S. authorizes award of attorney fees where the insured must institute legal action to enforce its insurance contract, the court continued:
We cannot authorize the imposition of attorney fees, however, when an insured has undisputedly failed to comply with express coverage terms, and the noncompliance *140 may extinguish the insurer's liability under the policy.
International Ins., 124 Wash.2d at 815, 881 P.2d 1020.
In November 1994, Transamerica filed a CR 60(b) motion to vacate the order awarding attorney fees to Pederson's arguing that International Ins. represented a change in the controlling law. The trial court disagreed and denied the motion.
Generally, an appellate court will not disturb a trial court's disposition of a motion to vacate unless that court abused its discretion. Lindgren v. Lindgren, 58 Wash. App. 588, 595, 794 P.2d 526 (1990), review denied, 116 Wash.2d 1009, 805 P.2d 813 (1991). A trial court abuses its discretion when it is exercised on untenable grounds or for untenable reasons, or when the discretionary act was manifestly unreasonable. Lindgren, 58 Wash.App. at 595, 794 P.2d 526 (citing Coggle v. Snow, 56 Wash.App. 499, 507, 784 P.2d 554 (1990)). Transamerica, however, argues that the appropriate standard of review is de novo because whether the International Ins. case effected a change in the law is purely a legal issue. See State v. McCormack, 117 Wash.2d 141, 143, 812 P.2d 483 (1991), cert. denied, 502 U.S. 1111, 112 S.Ct. 1215, 117 L.Ed.2d 453 (1992) (de novo review is appropriate where the issues involve solely questions of law).
We agree with the trial court's conclusion that International Ins. did not effect a change in the law. Clearly, International Ins. did not overrule Olympic S.S. Rather, it significantly qualified the broad entitlement to fees created by Olympic S.S. by distinguishing cases where the insured failed to comply with coverage terms.[14] Therefore, we employ the abuse of discretion standard to the court's disposition of the CR 60(b) motion. To vacate the attorney fee award on grounds discussed in International Ins., the trial court would have been required to make a factual determination that Pederson's "undisputedly failed to comply with express coverage terms." The trial court did not enunciate its reasons for denying the motion.[15] The absence of a finding on this matter precludes application of the International Ins. rule. Accordingly, the trial court did not abuse its discretion by denying the motion to vacate the attorney fee award.
Transamerica asserts that the trial court also erred in awarding Pederson's attorney fees for defending the CR 60(b) motion. Transamerica contends that Olympic S.S. does not authorize an award of fees for defending a CR 60(b) motion because that is not an attempt to obtain the benefit of its insurance contract. We disagree. The award was authorized by Olympic S.S. Pederson's costs in defending the CR 60(b) motion were costs expended to obtain the full benefit of its insurance contract and were authorized by the insurance contract.

Pederson's Request for Attorney Fees
Pursuant to Olympic S.S., Pederson's requests an award of fees incurred in this appeal. An award of attorney fees is proper when authorized by a contract, statute, or recognized ground of equity. State v. Keeney, 112 Wash.2d 140, 142, 769 P.2d 295 (1989); State Farm Mut. Auto. Ins. Co. v. Johnson, 72 Wash.App. 580, 593, 871 P.2d 1066, review denied, 124 Wash.2d 1018, 881 P.2d 254 (1994). Additionally, RAP 18.1(a) authorizes an award of attorney fees if "applicable law grants to a party the right to recover reasonable attorney fees." In Olympic S.S., the court ruled that the following language in the insurance policy authorized an award for attorney fees:
The Company [Centennial] will pay, in addition to the applicable limits of liability:
....

*141 ... reasonable expenses incurred by the insured at the Company's request in assisting the Company in investigation or defense of any claim or suit....
Olympic S.S., 117 Wash.2d at 52, 811 P.2d 673. The Transamerica policy contains an identical provision. Accordingly, we grant Pederson's request for attorney fees on appeal, assuming compliance with RAP 18.1.
Affirmed.
HOUGHTON, Acting C.J., and BRIDGEWATER, J., concur.
NOTES
[1] See also Twin City Fire Ins. Co. v. King County, Wash., 749 F.Supp. 230 (W.D.Wash.1990), aff'd, 942 F.2d 794 (9th Cir.1991) (prejudice presumed as a matter of law where insured notified insurer of claim after the case was lost, the judgment was awarded and an appeal was filed, and one day before a settlement conference).
[2] The insurance contract provided that, in the event of an occurrence, Pederson's was to give written notice, as soon as practical, containing reasonably obtainable information with respect to the time, place and circumstances of the occurrence.

The record does not reveal the precise date on which Pederson's learned the leak had contaminated groundwater or invaded property of adjacent landowners. It is clear, however, that discovery came after the initial assessment of soil in early 1990 and probably during the excavation of soil which began in October 1990. By March 1991, PLSA reported the clean up of the contaminated soil, including that in adjacent property and ground water, was completed.
[3] We also note that Pederson's actions in promptly and thoroughly removing the contamination comport with the public policy behind the Model Toxics Control Act; RCW 70.105D.010 states:

(1) Each person has a fundamental and inalienable right to a healthful environment, and each person has a responsibility to preserve and enhance that right. The beneficial stewardship of the land, air, and waters of the state is a solemn obligation of the present generation for the benefit of future generations.
(2) A healthful environment is now threatened by the irresponsible use and disposal of hazardous substances. There are hundreds of hazardous waste sites in this state, and more will be created if current waste practices continue. Hazardous waste sites threaten the state's water resources, including those used for public drinking water.... The main purpose of this act is to raise sufficient funds to clean up all hazardous waste sites and to prevent the creation of future hazards due to improper disposal of toxic wastes into the state's land and waters.
(Footnote omitted).
[4] See Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 788 F.Supp. 846 (D.N.J.1992) (owned property exclusion held not applicable to remedial measures taken by insured to prevent further injury to the groundwater); Savoy Medical Supply Co., Inc., v. F & H Mfg. Corp., 776 F.Supp. 703 (E.D.N.Y.1991) (the interests in a swift cleanup warrant creating incentive for the insureds to stop the pollution as soon as possible); Unigard Mut. Ins. Co. v. McCarty's, Inc., 756 F.Supp. 1366, 1369 (D.Id.1988) (the owned property exclusion did not bar coverage despite the lack of evidence that contaminants had spread to adjacent lands or into groundwater); United States v. Conservation Chem. Co., 653 F.Supp. 152, 200-01 (W.D.Mo.1986) (where groundwater contamination exists, abatement costs to prevent damage or further damage to third parties not excluded); Northern States Power Co. v. Fidelity and Cas. Co. of N.Y., 504 N.W.2d 240 (Minn.App.1993), aff'd, 523 N.W.2d 657 (Minn.1994); Polkow v. Citizens Ins. Co. of Am., 180 Mich.App. 651, 447 N.W.2d 853, 857 (1989), rev'd, 438 Mich. 174, 476 N.W.2d 382 (1991) (the primary concern is to clean up and prevent further damage to public resources, not solely to remedy problems located on the insured's property); Broadwell Realty Serv., Inc. v. Fidelity & Cas. Co. of N.Y., 218 N.J.Super. 516, 528 A.2d 76, 82-3 (App.Div.1987) (where continuing discharge of contaminants into stream, abatement costs to prevent continued contamination and damage to third parties not barred by exclusion).
[5] See also Consolidated Rail Corp. v. Certain Underwriters at Lloyds, No. 84-2609, 1986 WL 6547 (E.D.Pa.1986), aff'd without published opinion, 853 F.2d 917 (3d Cir.1988) ("There is no logical or just reason why an insured should allow a condition on his land to result in damage to others simply to assure and secure coverage when preventative measures could prevent not only substantial damage or loss to the property of others, but also prevent sizable claims for damages against the insured and his insurer."); Patz v. St. Paul Fire and Marine Ins. Co., 817 F.Supp. 781, 783, (E.D.Wis.1993), aff'd, 15 F.3d 699 (7th Cir.1994) (citing City of Edgerton v. General Cas. Co. of Wis., 172 Wis.2d 518, 493 N.W.2d 768 (App.1992)) ("We adopt the reasoning of those courts which have held that the owned-property exclusion does not apply where the concern is not primarily the premises of the insured, but rather the substantial harm, or risk of substantial harm, to third-party property, including natural resources belonging to the people of the state.")
[6] The court instructed the jury that Transamerica had the burden of proving Pederson's failed to comply with the following conditions: (1) to give written notice of the particulars of the occurrence as soon as practicable, (2) if a claim is made or a suit brought against Pederson's, to immediately forward such demand, notice, summons or other process to Transamerica, (3) to refrain from making any voluntarily payment, assume any obligation or incur any expense other than first aid, and (4) to do nothing after loss to prejudice Transamerica's rights to seek recovery from any person or organization that might be liable.
[7] See, e.g., Salzberg, 85 Wash.2d 372, 535 P.2d 816; Pulse, 18 Wash.App. 59, 566 P.2d 577 (holding that breach of coverage terms by the insured did not, in and of itself relieve insurer from paying the insurance proceedsinsurer had burden of proving it was prejudiced by the noncompliance).
[8] Jury instruction 17 said:

"It is the duty of the court to instruct you as to the measure of damages. By instructing you on damages, the court does not mean to suggest for which party your verdict should be rendered.
"If your verdict is for the plaintiff, then you must award to Pederson's the reasonable and necessary amount of money that they have spent or become obligated to pay for clean up.
"The burden of proving damages rests upon the plaintiff and it is for you to determine, based upon the evidence, whether any particular element has been proved by a preponderance of the evidence."
[9] Transamerica's proposed instructions said Pederson's bore the burden of proving that it was legally obligated to pay damages because of property damage to which insurance applied and that Pederson's loss was excluded from coverage if Transamerica proved that only Pederson's property was damaged.
[10] The court instructed the jury:

Prejudice means damage or injury and must be actual and substantial.
In determining whether the defendant has been prejudiced, you may consider, among others, the following factors:
(1) The ability to investigate the claim;
(2) The ability to defend and prepare a viable defense;
(3) The procedure and cost involved in the clean up.
These factors are not exclusive and no single factor is determinative. With reference to these issues, you must be governed by your own judgment, by the evidence in the case, and by these instructions.
[11] Transamerica argues that instruction 12: (1) failed to advise the jury of Transamerica's theory that Pederson's destruction of the tank caused prejudice; (2) failed to tell the jury of Transamerica's right to investigate and defend; (3) failed to tell the jury that Transamerica was entitled to protect its own interests; and (4) wrongly shifted the burden of proof.
[12] The insurance agreement provided:

Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.
[13] We also note that it appears that Pederson's acted efficiently and in good faith to clean up the contamination in compliance with the Model Toxics Control Act. RCW 70.105D.010 says in part:

(3) Many farmers and small business owners who have followed the law with respect to their uses of pesticides and other chemicals nonetheless may face devastating economic consequences because their uses have contaminated the environment or the water supplies of their neighbors....
(4) It is in the public's interest to efficiently use our finite land base ... our clean-up policies, and to clean up and reuse contaminated industrial properties in order to minimize industrial development pressures on undeveloped land and to make clean land available for future social use.
[14] Transamerica itself could have attempted to distinguish Olympic S.S. on grounds that the insured breached its obligations under the contract. A losing party may not ordinarily challenge a court's order based on later expansion or restriction of case law when the party could have argued for such an alteration of existing law. Allowing parties to open up judgments or orders arguing that the law has since changed abrogates the finality of such rulings.
[15] Pederson's asserts that the trial court's denial of the motion was also based upon Transamerica's failure to raise the issue in a timely manner and the record appears to support this contention.