# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 3, 2010 Session

## KRISTEN COX MORRISON v. PAUL ALLEN ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section
Chancery Court for Davidson County
No. 05-1489-1     Claudia Bonnyman, Chancellor**

---

**No. M2007-01244-SC-R11-CV - Filed February 16, 2011**

---

CORNELIA A. CLARK, C. J., concurring in part and dissenting in part.

I concur in Part I of the majority opinion, holding that the Plaintiff is entitled to a judgment against the Defendants based upon their failure to procure a life insurance policy not subject to contest. I also concur in Part III, reversing the trial court's award of $300,000 against the Defendants for the cancellation of the First Colony policy; in Part IV, declining to address whether damages under the Tennessee Consumer Protection Act might be available based on the Defendants' actions regarding the American General policy; and in Part V, declining to address comparative fault. However, I respectfully dissent from the majority's conclusion in Part II that the Defendants are not entitled to a credit of $900,000. Accordingly, I would find it unnecessary to address the issue of the ad damnum clause in Part VI.

As the majority recognizes, a successful plaintiff in a breach of contract action is entitled to an award which will place her in the same position as if the contract had not been breached. See, e.g., Simonton v. Huff, 60 S.W.3d 820, 828 (Tenn. Ct. App. 2000) ("It is well settled that the purpose of awarding damages in an action for breach of contract is to place the non-breaching party in the same position that he or she would have been in if the contract had been fully performed."). Thus, where an insurer wrongfully breaches a contract to pay one million dollars, the insured is entitled to compensatory damages in the amount of one million dollars. Yet, the majority holds that the Plaintiff in this case is entitled to substantially more than that because she sued the insurer on multiple theories, only one of which was breach of contract, and then settled her multiple claims without identifying precisely the legal theory or theories upon which the insurer agreed to pay. I cannot agree with this result, which, in my view, provides a windfall to the Plaintiff; encourages a "kitchen

1

sink" approach to filing complaints; and adds an unnecessary bone of contention for parties trying to negotiate a settlement. It is, moreover, contrary to the well-settled rule of law that "an injured party may not profit from a defendant's breach." Adams TV of Memphis, Inc. v. ComCorp of Tenn., Inc., 969 S.W.2d 917, 922 (Tenn. Ct. App. 1997). See also Hennessee v. Wood Group Ents., Inc., 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991); Action Ads, Inc. v. William B. Tanner Co., 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979).

The majority recognizes that "under ordinary circumstances, an independent insurance agent who is sued on a breach of contract claim for failing to procure an enforceable insurance policy is entitled to an offset in damages by the insurance company's settlement on the policy." The majority then goes on to conclude that this case presents something other than ordinary circumstances because the Plaintiff sued American General not only for breach of contract, but also for negligence, respondeat superior (which simply imputes the liability for another's tortious conduct), and for violating the provisions of the Tennessee Consumer Protection Act (which has the potential for resulting in an award over and above compensatory damages), and the record does not reveal upon which of these theories the parties settled their litigation. In support of this novel conclusion, the majority relies on two cases from the State of Washington: Pederson's Fryer Farms, Inc. v. Transamerica Insurance Co., 922 P.2d 126 (Wash. Ct. App. 1996), and Weyerhaeuser Co. v. Commercial Union Insurance Co., 15 P.3d 115 (Wash. 2000) (en banc). In my view, these cases are inapposite to this lawsuit.

Pederson's Fryer Farms dealt with an insured's efforts to recover clean-up costs after it discovered environmental contamination from a leaking underground gasoline tank. Pederson's, the insured, had policies with at least three insurance companies. It settled with two of the insurers and obtained a jury verdict against the third, Transamerica. Transamerica sought a credit for the amount of the settlement with the other two insurers. The trial court refused to reduce the judgment and Transamerica averred error. The Washington Court of Appeals found no error because the settlement released the two insurers from not only the claim at issue, but from all liability for *past* and *future* environmental claims.[1] Pederson's Fryer Farms, 922 P.2d at 139. Accordingly, it was impossible to discern the portion of the settlement amount that was attributable to the clean-up costs that were the subject of the jury's verdict, and "[t]hus, no showing of double recovery was made." Id. In stark contrast, the settlement with American General in this case does not implicate any potential past or

---

[1] Unlike a life insurance policy which is payable only upon a singular event – the death of the insured – the policies at issue in Pederson's appear to have been general liability policies. Obviously, it is entirely feasible that the plaintiff in Pederson's would be so unfortunate as to discover at some later date another environmental contamination problem, arising perhaps from another buried but as yet undiscovered gasoline tank that has been leaking for many years, or from a future above-ground spill of a hazardous substance. From what we can ascertain from the opinion, the insurers with whom Pederson's settled would be released from these *additional and distinct* claims.

2

future claims. The Plaintiff's causes of action against American General in this case arise out of a single transaction–the insurance policy–which was triggered by a single incident–Mr. Morrison's death. The entire amount of the settlement is therefore attributable to a single set of unique facts.

The majority declares that, like the settlement in Pederson's, "the Plaintiff's settlement agreement also released American General from all past, present, and future claims." I disagree. As noted in footnote 7 of the majority opinion, the release pertains to causes of action etc. "'relating to claims in the matter of the arbitration' in this case." The "matter of the arbitration" is the one million dollar life insurance policy issued on behalf of Mr. Morrison. The release is therefore limited by its very terms to the single subject of this particular lawsuit: the policy on Mr. Morrison's life issued by American General upon the application documents prepared by the Defendants. This release is simply not comparable to the release obtained in the Pederson's case, and the reasoning underlying the denial of an offset in Pederson's is not applicable here.

The majority also asserts that "[w]e cannot assume . . . from the nature of this [settlement and release] agreement that American General settled solely on the basis of its failure to pay on the insurance policy." I am mystified by this assertion. On what other basis did the Plaintiff have a claim against American General *except* its failure to pay on the policy? Regardless of whether the Plaintiff characterized American General's refusal to perform under the policy as a breach of contract or a tort, in this case the *only* duty American General *could* have owed the Plaintiff was to perform under the policy by paying her one million dollars on her husband's death. Moreover, American General would have avoided the Plaintiff's claim under the TCPA had it paid on the policy without contest, even if, as the Plaintiff averred, the coverage was otherwise "illusory." See Tenn. Code Ann. § 47-18-109(a)(1) (2001) (affording cause of action only where plaintiff "suffers an ascertainable loss of money or property").

Similarly to Pederson's Fryer Farms, the Weyerhaeuser case dealt with environmental clean-up costs, although on a much grander scale and involving approximately 130 sites across the nation. Weyerhaeuser, 15 P.3d at 120. As in the Pederson's case, the plaintiff insured settled with several of its insurers. Commercial Union ("CU") sought to benefit from these settlements by asking for a setoff against the verdicts rendered against it by the jury. Citing Pederson's, the trial court denied CU's request on the basis that CU had failed to carry its burden of proving that, absent the setoff, the plaintiff would benefit from a double recovery. The Supreme Court of Washington affirmed, agreeing with the trial court that substantial evidence supported Weyerhaeuser's contention that it had not been made whole by the settlements and that CU had "failed to carry its burden to demonstrate Weyerhaeuser has been fully compensated for its liabilities." Weyerhaeuser, 15 P.3d at 127. Weyerhaeuser may therefore be read as *supporting* the basic principle that plaintiffs suffering from a breach

of an insurance contract are to be placed in the same position as if the contract had been performed through an award of compensatory damages, and are not entitled to more than that.[2] Weyerhaeuser does *not* stand for the proposition that, by suing on multiple theories, and then settling without identifying the legal theory underpinning the settlement, the plaintiff is not subject to the general rule regarding offsets.[3]

In sum, the issue of offset in the instant case should not be determined on the basis of these two cases from Washington State because the instant case neither involves the potential for past or future claims, nor does it involve a complicated set of facts from which to draw differing opinions about the total amount of damages suffered by the Plaintiff. When American General refused to pay on its one million dollar policy insuring the life of Mr. Morrison, the Plaintiff suffered compensable damages in the amount of one million dollars. The Defendants proved that the Plaintiff recovered a settlement of $900,000 in compensation for these damages. There is no mystery about what the $900,000 settlement proceeds represent. There is no mystery about the total damages suffered by the Plaintiff. In my view, the Defendants are entitled to an offset in the amount of $900,000. Therefore, I respectfully dissent from Part II of the majority's opinion.

_____
CORNELIA A. CLARK, Chief Justice

---

[2] As noted in the opinion, Weyerhaeuser agreed "'that "double recovery" should not be permitted.'" Weyerhaeuser, 15 P.3d at 125.

[3] Indeed, both Pederson's and Weyerhaeuser are properly read as dealing with the issue of who has the burden of proof in a case where a previous settlement followed by a jury verdict raises the potential of a double recovery by the plaintiff.